Filed 4/26/13  Le Beau v. Bank of America CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| CHARLES P. LE BEAU, et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>BANK OF AMERICA, N.A., et al.,<br><br>    Defendants and Respondents. | D061045<br><br><br><br> (Super. Ct. No. 37-2009-00083414-CU-OR-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Joel M. Pressman, Judge.  Affirmed; judicial notice granted.


Plaintiffs and appellants Charles P. Le Beau and Victoria J. Le Beau (Plaintiffs) appeal a summary judgment granted in favor of defendant and respondent Bank of America, N.A. (the Bank) and its substituted trustee, defendant and respondent Northwest Trustee Services, Inc. (Northwest; sometimes together, Defendants), in this action alleging various claims arising out of nonjudicial foreclosure.  In 1988, Plaintiffs refinanced their La Jolla home with Gibraltar Savings (Gibraltar or the lender), obtaining a mortgage loan secured by a deed of trust recorded against the home.  By 1991, the Gibraltar note and trust deed had been transferred to Security Pacific Bank (Security

Pacific), through savings and loan insolvency procedures involving the Resolution Trust Corporation (RTC). In 1992, Security Pacific was merged into the Bank, and Plaintiffs made payments to the Bank until 2007. Plaintiffs then experienced financial difficulties and stopped making regular mortgage payments, as well as related insurance policy payments.

In 2008, based on Plaintiffs' defaults, nonjudicial foreclosure proceedings were commenced by the Bank, in its capacity as the successor in interest to the lender, acting through its newly substituted trustee Northwest. In February 2009, Plaintiffs brought suit against the Bank and Northwest, alleging causes of action for quiet title, tort and contract theories, all claiming Defendants lacked authority to proceed with the foreclosure. After extensive motion practice, the trial court granted a joint motion for summary judgment by Defendants on the first amended complaint, and denied Plaintiffs' cross-motion for summary judgment. (Code Civ. Proc., § 437c; all further statutory references are to this code unless noted.)

On appeal, Plaintiffs contend there were procedural irregularities in the manner in which the foreclosure proceedings were conducted, because of the complicated history of the transfer of the loan, its note and trust deed among the various financial institutions involved. Plaintiffs also contend the trial court committed several evidentiary, procedural, and substantive legal errors in ruling on Defendants' summary judgment motion and their cross-motion, or abused its discretion. Plaintiffs contend they raised meritorious objections that must have been inadequately considered.

2

We reject Plaintiffs' challenges to the court's granting of the joint Bank/Northwest motion for summary judgment. Because we conclude the Bank demonstrated as a matter of law that it was a proper party to initiate the nonjudicial foreclosure action, and it appropriately appointed the successor trustee and followed statutory procedures, no legal, evidentiary, or procedural error is apparent on this record. (Civ. Code, § 2924, subd. (a)(1).) We grant Defendants' request for judicial notice on appeal regarding documentation of the bank merger (part III.A, *post*), and affirm the summary judgment.

FACTUAL AND PROCEDURAL HISTORY

A. Financing Transaction; Lender's Transfer and Subsequent Bank Merger

On May 11, 1988, Plaintiffs obtained a $305,250 refinance mortgage loan from Gibraltar, for their home on Via Segovia in La Jolla (the loan). The payment obligations under the promissory note signed by Plaintiffs in favor of Gibraltar are secured by a deed of trust recorded against the property.

In the recorded deed of trust, Gibraltar or its designee were authorized to foreclose on it if Plaintiffs failed to make their monthly mortgage loan payments. There was no requirement in the trust deed for the borrower to obtain private mortgage insurance.

Because of Gibraltar's financial problems, the RTC obtained all of its assets. The RTC later assigned this loan to Security Pacific National Bank, and endorsed the promissory note package to it.

Security Pacific was merged into the Bank in 1992. As successor in interest, the Bank received all of the assets of Security Pacific, by operation of law. (12 U.S.C.

3

§ 215a(e).)[1]  This included the Security Pacific interest in the note and its deed of trust. The Bank now possesses the original note, as Plaintiffs admit in their pleading.

After the 1992 merger, Plaintiffs consistently made payments to the Bank.  The terms of the loan had not required that the Plaintiffs obtain private mortgage insurance. However, in 1997, Plaintiffs obtained an optional Bank "Disaster Mortgage Protection" policy, and their monthly premium payments under the "Disaster Mortgage Plan" were added to their monthly mortgage payment.

Around 2003 to 2004, Plaintiffs failed to pay their property taxes, which was a breach of the terms of the deed of trust.  Plaintiffs were disputing the validity of the assessed property taxes.  The Bank paid the property taxes and established an impound account, as permitted by the deed of trust.

Sometime between 1991 and 2003, Mr. Le Beau conveyed his interest in the property to Mrs. Le Beau via a quitclaim deed and interspousal transfer deed.  In 2003, Mrs. Le Beau conveyed her interest in the Property to Casa de Erin, LLC, a limited liability company of which she is or was apparently the only owner.[2]

---

[1]     Title 12 United States Code section 215a is part of the National Bank Consolidation and Merger Act (12 U.S.C. § 215 et seq.), under which the comptroller of the currency may be requested to approve a merger agreement.  We address the merger issues in more detail in part III.A., *post*, including Defendants' request on appeal for judicial notice of the merger certificate.

[2]     In their reply brief, Plaintiffs make representations that the transfers to the family company, Casa de Erin, were done for estate planning purposes and then rescinded, so that Plaintiffs are the true owners.  It is not disputed that Plaintiffs represent themselves and claim the property for themselves, regardless of the status of this family company, and we need not resolve that dispute about standing to sue with regard to the quiet title cause of action, as other issues are dispositive on all of the claims.

B.  Lawsuit and Preliminary Motions; First Amended Complaint

In June 2007, Plaintiffs had financial difficulties and stopped making regular loan payments.  They did not pay the disaster insurance policy premiums.  Due to the default, the Bank canceled the optional policy in June 2007.  Many letters were exchanged between Plaintiffs and the Bank about the various issues, and Plaintiffs sought a loan modification.

In October 2008, the Bank recorded a substitution of trustee for Northwest to replace Security Pacific's trustee (Equitable or Security Allied).  Plaintiffs executed a borrower signature authorization that authorized the Bank to speak with Barry Diamond of Real Estate Financial Network, LLC regarding the loan.

In November 2008, the Bank commenced nonjudicial foreclosure proceedings.  At its direction, Northwest recorded a notice of default.  On December 8, 2008, Plaintiffs sent a letter to Defendants arguing that approximately $13,000 in mortgage payments made from May through September 2007 had not been properly credited to their account, if the monthly payment amounts were calculated as Plaintiffs thought they should be (the original $1,850 installments, as opposed to an interest rate change permitted by the note, adjusting the monthly payment amount to around $3,800).  In February 2009, Northwest recorded a notice of trustee's sale at the Bank's direction.

In February 2009, Plaintiffs, in pro per, filed their lengthy complaint, alleging that the Bank should not have set up an impound account, had not credited Plaintiffs all of their payments, and had otherwise acted wrongfully.  The complaint alleges that in 1992, the Bank "acquired" Security Pacific, and the mortgage loan was "allegedly" assigned to

5

the Bank. The exhibits to the complaint include a preliminary title report listing the chain of title for the beneficial interest under the trust deed, from Gibraltar to Security Pacific, to the Security Pacific trustees, and showing Northwest's current capacity as trustee. Northwest recorded the notice of default on October 30, 2008. Other exhibits attached to the complaint showed the disputes over the property tax payments made by the Bank and Plaintiffs' request for loan modification.

In March 2009, Plaintiffs obtained a preliminary injunction conditioned upon their making monthly payments. They did so until October 2010.

The Bank and Northwest brought an initial summary judgment motion, but it was taken off calendar when Plaintiffs were granted leave to amend the complaint. Plaintiffs filed a cross-motion for summary judgment, which was also taken off calendar.

Plaintiffs filed a first amended complaint (FAC) naming the Bank, Northwest and others as defendants. It relies on the same exhibits as attached to the original complaint. Next, the court ruled upon a motion for judgment on the pleadings and a set of demurrers, with the result that the numerous surviving causes of action in the FAC allege quiet title, rescission for improper cancellation of the mortgage insurance policy, unfair debt collection practices, unfair business practices, breach of fiduciary duty, breaches of contract and the covenant of good faith and fair dealing, intentional infliction of emotional distress, elder abuse, and relief such as accounting, injunctive and declaratory

relief. Among other things, Plaintiffs seek damages for the property's lost equity due to the stigma of foreclosure (approximately $480,000) [3]

The Bank and Northwest answered the FAC.

### C. Current Cross- Motions; Ruling

The Bank and Northwest brought another joint summary judgment motion or, alternatively, sought summary adjudication on the claims alleged in the FAC. They argued that judicial admissions were made in the FAC that the Bank had succeeded to the assets of Security Pacific, through "acquiring" Security Pacific by merger. They contended that Plaintiffs' discovery responses were devoid of facts and showed that Plaintiffs would be unable to prove the essential elements of the claim. The Bank was in possession of the original note and was the undisputed holder of the original lender's interest in the property. Additionally, Defendants argued that Plaintiffs would be unable to prevail on their claims about improper debt collection, unfair business practices, breaches of fiduciary duty or the implied covenant, emotional distress, elder abuse, or negligence per se. Regarding Northwest, Defendants argued that the complaint and the discovery responses failed to identify any charging allegations against Northwest individually.[4]

---

[3] The record does not appear to contain the operative FAC, only a proposed pleading, but it is not disputed that the trial court resolved all of the pleadings motions, and that the summary judgment motions were brought upon Plaintiffs' remaining causes of action.

[4] On appeal, Plaintiffs do not specifically argue any of their statutory or tort claims regarding improper debt collection or unfair business practices. They pursue mainly the FAC's quiet title claim, a right to rescission based on alleged fraudulent retroactive

7

In support of their motion, Defendants filed an attorney declaration attaching copies of the discovery responses from Plaintiffs. They also supplied declarations from (a) the Bank's assistant vice-president Jacqueline Tobolski and (b) Northwest's chief operating officer (COO), Michael Montgomery.[5] Bank official Tobolski's declaration states her occupation gives her custody and control over the Bank's files kept in the regular course of its business. She attached copies of the original Gibraltar note, the deed of trust, the enrollment form for the "disaster mortgage insurance program" in which Plaintiffs were enrolled, and the form of cancellation of their enrollment when they did not make monthly payments. The Bank's files showed that when Plaintiffs failed to pay their property taxes, the Bank established an impound account and advanced those amounts. The loan history showed that Plaintiffs made no loan payments between June 2007 and April 2009. Payments resumed after the March 2009 preliminary injunction was issued.

The Bank substituted Northwest as the trustee under the deed of trust, and Tobolski's declaration attaches a recorded copy. Foreclosure proceedings were initiated, as shown in the declaration's attached copy of the notice of default and notice of trustee's sale. A loan history of all payments made, amounts advanced to pay property taxes and charges accrued on the Loan was provided with the Bank's attorney's declaration.

---

cancellation of disaster mortgage insurance, and invasion of financial privacy (not a separate cause of action), and argue that all of the other claims are subsumed therein.

[5] Defendants obtained an augmentation order for the Montgomery declaration, pursuant to their notice designating record on appeal (to include "all supporting declarations").

Northwest COO Montgomery's declaration states his occupation gives him custody and control over Northwest's files that are kept in the regular course of its business. He attached copies of the substitution of Northwest as the trustee under the deed of trust, as well as copies of the notice of default and notice of trustee's sale.[6]

Also in support of their motion, Defendants requested judicial notice of the recorded Gibraltar trust deed, the interspousal grant deeds and the recorded foreclosure notices.

Plaintiffs filed opposition, as well as their cross-motion for summary judgment. Plaintiffs raised evidentiary objections to the declarations of Defendants' attorney, and those of the Bank and Northwest's officials, generally contending that they contained hearsay and were irrelevant. Supplemental oppositions and replies were filed.

After hearing argument on the fully briefed cross-motions, the trial court granted summary judgment to the Bank and Northwest, and took judicial notice as requested. The order addresses the evidentiary objections brought by each side, and criticizes the separate statement filed by Plaintiffs as confusing and written in an improper format. (Cal. Rules of Court, rule 3.1350(f), (h).) The court set forth the history of the transaction, finding among other things that the Bank was in possession of the note, and its payment and impound of property tax payments had been authorized under the terms of the deed of trust, regardless of the validity of the assessed taxes, and it was entitled to proceed with the nonjudicial foreclosure. There were no charging allegations against

---

[6]     Plaintiffs complain that Northwest changed its designation of its "person most knowledgeable" only shortly before Montgomery's declaration was filed. However, Montgomery had filed a declaration in previous motion proceedings, and Plaintiffs show no undue prejudice from the filing and consideration of the Montgomery declaration.

9

Northwest, and Defendants were entitled to judgment as a matter of law. Plaintiffs timely appealed.

DISCUSSION

Plaintiffs primarily contend the Bank had no authority to enforce the Gibraltar note or deed of trust, since the Plaintiffs' search of recorded documents did not disclose that any separate transfer, endorsement or conveyance of either instrument had been executed and recorded, as between Security Pacific and the Bank. Plaintiffs contend they had the right to examine the Gibraltar note, before the Bank could take action to substitute the trustee or file its notice of default. They claim the record does not support the grant of summary judgment to the Bank and Northwest, because judicial notice of recorded documents was insufficient to establish the truth of facts stated within the documents.

Plaintiffs presented their own expert declarations giving opinions about the arguable inadequacy of the chain of title shown in the recorded documents, and contend that Defendants should have produced controverting expert evidence, but did not, and therefore triable issues of fact remain about the Bank's standing to carry out nonjudicial foreclosure proceedings. They additionally claim the trial court should not have found defective and discounted their document entitled "Plaintiff's Opposition, Response and Supporting Evidence to Defendants' Motion for Summary Judgment," and therefore the court abused its discretion in overruling their evidentiary objections about Defendants' documentation of the transfer of interests between Gibraltar, Security Pacific and the Bank.

10

Further, Plaintiffs contend the trial court should have granted their alternative cross-motion for summary judgment, or it mistakenly ignored those arguments. They claim they can show the Bank wrongfully canceled their optional mortgage disaster insurance policy or publicized their private finances, and these acts amounted to breaches of contractual or fiduciary duties. (Civ. Code, § 2954.6, subd. (a).) We will discuss Plaintiffs' various procedural and evidentiary arguments and objections as they are intertwined with the merits of the ruling and judgment.

I

*APPLICABLE STANDARDS*

Summary judgment rulings are reviewed de novo. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.) We also review de novo the interpretation given to any statutes in the rulings. (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699.)

"Civil Code section 2924, subdivision (a)(1) is part of a broad statutory system that creates a largely ministerial process leading to a foreclosure sale that does not require any court oversight." (*Arabia v. BAC Home Loans Servicing, LP* (2012) 208 Cal.App.4th 462, 471.) "The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830.)

11

"In a nonjudicial foreclosure, also known as a 'trustee's sale,' the trustee exercises the power of sale given by the deed of trust." (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1236.) "Nonjudicial foreclosure is less expensive and more quickly concluded than judicial foreclosure, since there is no oversight by a court, '[n]either appraisal nor judicial determination of fair value is required,' and the debtor has no postsale right of redemption." (*Ibid*.) Civil Code section 2924 governs the recording and mailing of a notice of default to begin the nonjudicial foreclosure process, and outlines which entities can start this process (beneficiary, trustee, mortgagee, etc.). (See *Gomes v. Gibraltar Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1155 (*Gomes*) [no cause of action exists to require the holder of a promissory note or its designee to prove it has authority to initiate a foreclosure proceeding].)

This appeal hinges on whether these basic statutory policies were adequately protected here, or whether Plaintiffs' technical objections to the procedures used have any merit. Initially, we observe that Plaintiffs, as in propria persona litigants, "are entitled to the same, but no greater, rights than represented litigants and are presumed to know the [procedural and court] rules." (*Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 795.) Mr. Le Beau is a "former long-time attorney" who was previously licensed in California, and both he and Mrs. Le Beau are representing themselves on appeal.

For any appellant, "[a]ppellate briefs must provide argument and legal authority for the positions taken. 'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived. [Citations.]' " (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857,

12

862.) "We are not bound to develop appellants' argument for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.) Since there are no charging allegations nor any specific arguments about any actionable conduct by Northwest, Plaintiffs have arguably waived any such claims against Northwest.

Although this court could legitimately affirm the summary judgment and underlying orders as to both defendants on the basis that Plaintiffs have failed to present any understandable, persuasive, or supported arguments on appeal, we are mindful that important rights are at stake, and we have examined the record for evidentiary and legal support for the summary judgment and discretionary orders issued by the trial court.[7]

II

*ADEQUACY OF DEFENDANTS' SHOWING ON SUMMARY JUDGMENT:
PROCEDURAL MATTERS*

A. Arguments about Separate Statement Inadequacy and Cross-Motions

Section 437c, subdivision (b)(3) requires an opposition to a motion for summary judgment to include a separate statement "that responds to each of the material facts

---

[7] At oral argument, Plaintiff Mr. Le Beau claimed that he was never credited properly with over $13,000 for loan payments made in 2007. The record suggests that when he made such a claim to the Bank in December 2008, he was also disputing the amounts of the monthly payments and how the payments were applied. He refers to that issue in his opening brief as having been raised in his separate statement in opposition to the motion. However, in the argument portion of his brief, he mainly focused on other issues and did not identify any claims made to the trial court that any such discrepancy would have warranted any rescission of the notice of default for nonpayment. The Bank provided a loan history, Plaintiffs never meaningfully attacked it as inaccurate in this respect, and we are unable to further address such claims on this record.

contended by the moving party to be undisputed, indicating whether the opposing party agrees or disagrees that those facts are undisputed." Under the California Rules of Court, rule 3.1350(f) and (h), the separate statement is supposed to "unequivocally state whether the fact is 'disputed' or 'undisputed,' " and to describe in a certain format "the nature of the dispute and describe the evidence that supports the position that the fact is controverted" (with citation to exhibit, title, page, and line numbers in the evidence submitted). (*Ibid.*)

In *Collins v. Hertz Corp.* (2006) 144 Cal.App.4th 64, 74, the court identified the functions served by the required separate statement in summary judgment proceedings: "It notifies the parties which material facts are at issue, and it provides a convenient and expeditious vehicle permitting the trial court to hone in on the truly disputed facts." (*Ibid.*) A failure to comply with this requirement may be sufficient grounds to grant the motion. (§ 437c, subd. (b)(3).) "[W]here evidence is not referenced, is hidden in voluminous papers, and is not called to the attention of the court at all, a summary judgment should not be reversed on grounds the court should have considered such evidence. Appellate courts need not address theories that were not advanced in the trial court." (*San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 316.)

Plaintiffs are correct in stating that the primary inquiry must be whether the moving party has made an adequate showing of entitlement to summary judgment, before the adequacy of an opposing separate statement can be deemed dispositive. (*Whitehead v. Habig* (2008) 163 Cal.App.4th 896, 900-903.) Here, the minute order and the formal order, comprising a total of 10 pages, include analysis of the three major declarations

14

produced by Defendants, but then criticize Plaintiffs' separate statement, with respect to its confusing treatment of the supporting evidence cited in the Defendants' separate statement. The court said Plaintiffs had produced only "generalized and non-specific objections [that] leave defendants and the Court to speculate exactly what plaintiffs may be objecting to and why, and make it virtually impossible to address such objections." The court next overruled the evidentiary objections brought by Defendants, but stated it had "only considered relevant and admissible evidence and matters that are proper for judicial notice."

In their separate statement, Plaintiffs merely attacked the Defendants' stated undisputed material facts and supporting evidence as "irrelevant," "misleading" or factually inaccurate, and then gave their own versions, but in a cursory and conclusory way. They assert the Bank was not the true beneficiary of the Gibraltar loan and Northwest was not the assignee of the Gibraltar trustee, but they provide no support for those claims other than citing to their own pleadings, opinions and declarations.

To the extent the Plaintiffs contend they were entitled to a continuance to repair their defective separate statement, the trial court did not have such a duty on its own motion, and Plaintiffs failed to show they requested such a continuance or that it would have been productive. "Under Code of Civil Procedure section 437c, a party opposing summary judgment does not have an automatic right for a second chance to prepare a responsive separate statement or present evidence. Instead, the party must demonstrate a reason for the trial court to exercise its discretion." (*Oldcastle Precast, Inc. v. Lumbermens Mutual Casualty Co.* (2009) 170 Cal.App.4th 554, 576.) In light of the

15

purpose of the separate statement, and the disjointed nature of this one, the analysis through which the court reached its ruling cannot be shown to be an abuse of discretion. The court exhaustively analyzed the evidence and facts, and made a reasonably based finding that Plaintiffs had failed to set forth specific facts showing that triable issues of material fact existed as to their causes of action. The defects in the separate statement were not treated as dispositive, on the entire record.

Moreover, since these two sets of motions addressed the same issue about the Bank's authority to conduct nonjudicial foreclosure proceedings, the trial court was not required to further or specifically address the merits of Plaintiffs' own summary judgment, when it issued a decision that the motion brought by the Defendants was meritorious. There is absolutely no indication in this record that the trial court in any way failed to grasp and resolve all of the issues properly brought before it in these motion proceedings.

## B. Expert Evidence

The trial court's evidentiary rulings are reviewed under a standard of abuse of discretion. (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694; *Wantuch v. Davis, supra*, 32 Cal.App.4th 786, 795.)

According to Plaintiffs, it was fatal to the Defendants' motion that they had not deposed Plaintiffs' offered experts, regarding both liability and damages. Likewise, Plaintiffs complain that the Defendants failed to produce their own experts. However, at the summary judgment motion stage of the proceedings, it was appropriate for the parties to address preliminary legal issues, based on the discovery undertaken thus far, without

the need for expert opinion. Plaintiffs fail to grasp that merely because they were able to obtain expert declarations interpreting the law in their favor, expert opinion is not dispositive insofar as it presents conclusions of law. (*Summers v. A.L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1178; *McGonnell v. Kaiser Gypsum Co.* (2002) 98 Cal.App.4th 1098, 1106.)

On the issues actually framed by the pleadings, the moving and the opposing papers, it was not informative to the court that Plaintiffs' legal expert (Attorney Ludlow Keeney) thought that defendants did not have "the requisite documents" to commence foreclosure against Plaintiffs' residence. Other evidence demonstrated that the Bank possessed the note and related security interest, by way of a bank merger and other history. Contrary to Plaintiffs' theory, expert testimony on the effect of a bank merger was not necessary, because conclusions of law could properly be drawn from the established, undisputed facts. Nor was it relevant to the liability issues whether Plaintiffs' property had declined in value, as their other expert opined. As we next discuss, the Bank demonstrated in its filings that it had the authority to appoint the substitute trustee and to pursue nonjudicial foreclosure proceedings.

III

*ADEQUACY OF DEFENDANTS' SHOWING ON SUMMARY JUDGMENT: SUBSTANTIVE MATTERS*

A. Merger and Assignment Issues; Judicial Notice on Appeal

Under the National Bank Consolidation and Merger Act (12 U.S.C. 215 et seq.), the comptroller of the currency may be requested to approve a merger agreement reached between a national banking association or a state bank, and a national bank located within

17

the same state.  If such a merger agreement is approved, the charter of the receiving association controls, and the receiving association is responsible for the liabilities of the bank or association that was merged into the receiving association.  (12 U.S.C. § 215a(a)(4).)  The receiving association (here, the Bank) "shall be deemed to be the same corporation as each bank or banking association participating in the merger.  All rights, franchises, and interests of the individual merging banks or banking associations in and to *every type of property (real, personal, and mixed) and choses in action shall be transferred to and vested in the receiving association by virtue of such merger without any deed or other transfer*.  The receiving association, upon the merger and without any order or other action on the part of any court or otherwise, shall hold and enjoy all rights of property, franchises, and interests . . . , and all other rights and interests . . . , in the same manner and to the same extent as such rights, franchises, and interests were held or enjoyed by any one of the merging banks or banking associations at the time of the merger . . . ."  (12 U.S.C. § 215a(e); italics added.)

Along these lines, the Bank and Northwest have requested that this court take judicial notice of the official certificate of merger issued by the comptroller of the currency in 1992, showing that the Bank took over the business of Security Pacific.  (Evid. Code, §§ 452, subd. (h); 459.)  This request has been deferred to this merits panel.  Plaintiffs oppose the request as hearsay, and claim it was untimely and not presented to the trial court.

In explanation of its current request, the Bank states that no such motion was made to the trial court because of the judicial admissions made in the verified complaint,

18

alleging that the Bank had "acquired" Security Pacific and therefore the Gibraltar loan was assigned to the Bank.  However, since Plaintiffs continue to claim the Bank cannot enforce the note or deed of trust without a separate transfer, endorsement or conveyance of either instrument, the Bank now requests judicial notice of the fact of merger, as not reasonably subject to dispute.  (Evid. Code, §§ 452, subd. (h); 459.)

For purposes of determining diversity jurisdiction, a federal court took judicial notice of a defendant bank's principal office location, as it was documented by the office of the comptroller of the currency, administrator of national banks.  (*Fortucci v. RBS Citizens, N.A.* (D. Mass. 2011) 784 F.Supp.2d 85, 88; see also Fed. Rules Evid., rule 201; *Royalty Network, Inc. v. Dishant.com, LLC* (S.D.N.Y.2009) 638 F.Supp.2d 410, 421 fn. 7 [taking judicial notice of principal place of business based on Securities and Exchange Commission filings].

It is well established that judicial notice of an official document does not include the establishment of the truth of statements of fact recited within that document. (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 265 (*Fontenot*).) However, a court may take judicial notice of the legal effect of the document's language, when that effect is clear and not reasonably subject to dispute.  (*Poseidon Development, Inc. v. Woodland Lane Estates, LLC* (2007) 152 Cal.App.4th 1106, 1117-1118 (*Poseidon*).)  "When a court is asked to take judicial notice of a document, the propriety of the court's action depends upon the nature of the facts of which the court takes notice from the document." (*Fontenot*, *supra*, at p. 265.)

A court may take judicial notice of "the fact of a document's recordation, the date the document was recorded and executed, the parties to the transaction reflected in a recorded document, and the document's legally operative language, assuming there is no genuine dispute regarding the document's authenticity. From this, the court may deduce and rely upon the legal effect of the recorded document, when that effect is clear from its face." (*Fontenot, supra*, 198Cal.App.4th at p. 265.)

Even though these Plaintiffs continue to dispute the consequences or effect of the 1992 bank merger, the fact that it occurred is not reasonably subject to dispute. There is no evident prejudice from taking judicial notice on appeal, and we grant the request. We will continue to examine the legal effect of the merger or acquisition, however, since that key issue was presented to the trial court without the benefit of this document.

B. Requirements for Authentication of Documents

The FAC makes a judicial admission that the Bank "acquired" and is the successor in interest to Security Pacific, and the Bank was able to show that it possesses the original note. Plaintiffs contend that they could nevertheless put the Bank to the proof of showing such possession and entitlement to foreclose, before it could properly substitute the trustee and file the notice of default. Plaintiffs point to a 2009 preliminary title report, an exhibit to the FAC, as showing that the beneficial interest under the trust deed was assigned to Security Pacific in 1991, and the Bank did not show up in the chain of title as then reported. Plaintiffs thus argue that the recorded documents presented by Defendants, about the recording of the notice of default and sale, are undermined and

20

invalid, and the same type of specific assignment and endorsement apparently made between Gibraltar and Security Pacific should have been repeated here.

Plaintiffs also claim that Ms. Tobolski, the Bank assistant vice-president, does not qualify as a custodian of records, and that there are apparently other such custodians employed at the Bank, and she admitted this at her deposition. Plaintiffs thus complain that her declaration does not expressly declare that the Bank was the current beneficiary and Northwest was the substituted trustee for the Gibraltar asset, such that her declaration fails to comply with the requirements of the business records hearsay exception. (Evid. Code, § 1271.)

Plaintiffs rely on *Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366 (*Herrera*) to argue that judicial notice of the truth of named facts within recorded documents, such as status as a beneficiary, is not appropriate. (*Id.* at p. 1375.) In *Herrera*, the appellate court ruled the trial court could not take judicial notice of the legal effect of an assignment of a particular deed of trust, because the record failed to show that such assignment was made by a person having the authority to do so, within the chain of title. (*Ibid.*; *Fontenot, supra*, 198 Cal.App.4th 256, 267.) In *Herrera* the record did not show there was any effort to satisfy the requirements of the business records exception. (*Herrera, supra,* at p. 1376; Evid. Code, § 1271.)

As explained in 1 Witkin, California Evidence (5th ed. 2012) Hearsay, section 238, page 1101, the business records exception to hearsay rules uses as a theory of admissibility that either an "entrant" of the record, or an "informant," had knowledge of the facts from personal observation. Evidence Code section 1271 allows evidence of "a

21

writing made as a record of the act, condition, or event" to be admissible "to prove the act, condition, or event" under certain circumstances. As relevant here, the Defendants' declarations (from the Bank assistant vice-president and the Northwest COO) demonstrate that the writing was made in the "regular course of a business"; "at or near the time of the act, condition, or event"; and these qualified witnesses testified to "its identity and the mode of its preparation"; and "the sources of information and method and time of preparation were such as to indicate its trustworthiness." (Evid Code, § 1271, subds. (a)-(d); 1 Witkin, Cal. Evidence, *supra,* Hearsay, § 228, p. 1090.) The Bank's declarations show that the assets were transferred according to federal authorities. (12 U.S.C. § 215a(e).) No specific citation to the business records exception was required. (See *Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 322.) The defects in proof that were evident in *Herrera, supra*, 196 Cal.App.4th 1366 are not present here.

## C. Gravamen of FAC; Prejudice

Plaintiffs admit they incurred a legal obligation arising out of their promissory note and related deed of trust. The deed of trust allows the lender or successor to invoke the power of sale, if Plaintiffs fall into default. To contest the process, Plaintiffs' discovery responses relied on their own FAC and exhibits and other pleadings, and mainly referred Defendants back to their own set of documents. Plaintiffs essentially claim this financial institution cannot commence a nonjudicial foreclosure action in its name, without first providing the debtor with proof of current title status, such as through endorsement. They also seem to argue that it is possible that some of the Security Pacific assets went elsewhere than to this Bank, after the merger.

22

The merger method of transfer that occurred here is comparable to the method of assignment of assets. Assignability of assets is the general rule, and it would be Plaintiffs' burden to show that some exception to the rule applies in this case. (See *Essex Ins. Co. v. Five Star Dye House, Inc.* (2006) 38 Cal.4th 1252, 1259-1263.) When a party asserts a foreclosure right under an assigned instrument, the courts have declined to require the party to separately demonstrate the validity of the assignment in this nonjudicial foreclosure context. (*Fontenot*, *supra*, 198 Cal.App.4th 256, 270.) Under Civil Code section 2936, an assignment of an underlying debt operates to transfer the security for the debt. (See *Cockerell v. Title Insurance and Trust Company* (1954) 42 Cal.2d 284, 291.) Civil Code section 2924, subdivision (a)(1) allows the nonjudicial foreclosure process to be carried out by a beneficiary, mortgagee, trustee or agent.

Because nonjudicial foreclosure sales methods are statutorily prescribed, they are presumed to have been conducted regularly, and "the burden of proof rests with the party attempting to rebut this presumption." (*Fontenot*, *supra*, 198 Cal.App.4th 256, 270, citing *Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1258 [burden on party challenging the trustee's sale to prove there was irregularity].) For a plaintiff to contend the notices of default and sale were invalid because the Bank lacked authority to conduct the sale, the plaintiff must plead and prove facts demonstrating the nature of the impropriety, or creating triable issues about it. (*Fontenot*, *supra,* at pp. 270-272.)

In *Fontenot, supra*, 198 Cal.App.4th 256, the court rejected the plaintiff's claim that the burden should rest on the party that asserts a right under an assigned instrument, to demonstrate that fact of assignment. The presumption of regularity in nonjudicial

23

foreclosure does not rely upon such separate proof. Similarly, when a deed of trust is assigned, the transaction should be examined for whether the lender's agent was duly acting on behalf of the principal, or lender. The plaintiff cannot merely challenge the lender's nominee as facially lacking the capacity to pursue assignment rights. To demonstrate that a nonjudicial foreclosure sale or notice is invalid because of an entity's lack of authority to foreclose, a plaintiff must allege and show that the current entity/lender never received any valid assignment of the debt in any manner. (*Id.* at pp. 271-272.)

These Plaintiffs' speculative theories are similar to those already rejected in cases such as *Gomes*, *supra*, 192 Cal.App.4th 1149, 1155, and *Fontenot*, *supra*, 198 Cal.App.4th 256, 270. Such cases recognize that a lender's rights to foreclose and appoint agents arise out of the obligations reflected in the promissory note and related deed of trust, even if they were transferred. In *Gomes*, the plaintiff had claimed he was unaware of the identity of the note's current beneficial owner, and thus he did not know whether a certain entity, MERS0 (as nominee for the lender and lender's successors and assigns) was given authority to initiate the foreclosure, by the current owner of the note. (*Id.* at pp. 1152-1157.) The court determined that the successor had authority to act, and further, that the plaintiff's deed of trust (attached to his complaint), showed he had agreed, when executing that document, that MERS had the authority to initiate a foreclosure. The court explained, "the deed of trust contains no suggestion that the lender or its successors and assigns must provide Gomes with assurances that MERS is authorized to proceed with a foreclosure at the time it is initiated." (*Id.* at p. 1157.)

24

Accordingly, the plaintiff could not now contest the ability of MERS to foreclose and sell the property.

These Plaintiffs seem to rely on *Gomes*, *supra*, 192 Cal.App.4th 1149, to contend that they personally never agreed in executing the trust deed that anyone other than the assignees of Gibraltar could foreclose on the security. However, simply because there was such an express agreement in *Gomes* (that the entity of MERS could conduct a foreclosure) does not mean that it is always required. Instead, there are other legal ways in which the security interest in the property can pass from one entity to another, including merger, and the Bank made a sufficient showing of how this occurred, and about its duly recorded substitution of Northwest as the trustee. There is no need for expert testimony to establish the relevant points of law, despite Plaintiffs' arguments to the contrary. (12 U.S.C § 215a(e); see *Bayer v. Barrett* (1932) 127 Cal.App. 305, 311-312; see *Premier Bank v. Diagle* (La. App. 1992) 599 So.2d 503, 505; see also *In re Cleveland Savings Society* (Ohio Com.Pl. 1961) 192 N.E.2d 518; appeal dismissed 183 N.E.2d 234 [holding that a transfer by mutual savings bank of its assets and liabilities to a national bank under purchase agreement, with the consent of the comptroller of the currency, was in compliance with the statutory powers of both banks].)

Nor does the California Commercial Code necessarily preclude the merger method of transfer that occurred here. In *Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 444 (*Debrunner*), the court rejected a plaintiff's similar claim of defective foreclosure, that was based on alleged defects in the chain of assignments and the absence of "lawful ownership" of the note. In part, that plaintiff relied on Uniform

25

Commercial Code (UCC) provisions pertaining to negotiable instruments, as these Plaintiffs do. (Cal. U. Com. Code, § 3203, subd. (a).) However, the statutory framework of Civil Code sections 2924 et seq. for governing nonjudicial foreclosure sales is not displaced by UCC provisions found in California Uniform Commercial Code section 3301 et seq. (*Debrunner, supra,* at pp. 440-441.) Civil Code section 2924 allows a trustee, mortgagee, beneficiary, or agent to initiate nonjudicial foreclosure, and it does not separately or additionally indicate physical possession of the underlying promissory note is required. (*Debrunner, supra,* at pp. 440-441.)[8] In *Debrunner,* there was no prejudice shown, because that plaintiff had failed to allege he was unable to contest or avert foreclosure, due to any such technical issues. (*Id.* at pp. 443-444.)

Likewise, these Plaintiffs did not show how or why the Bank had acted without authority, or failed to meet necessary disclosures, nor that they were entitled to but were prevented from asserting any defenses to enforcement of the obligation. To recover on a theory of wrongful foreclosure, a plaintiff "has generally been required to demonstrate [that] the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests." (*Fontenot, supra*, 198 Cal.App.4th at p. 272; *Melendrez v. D & I Investment, Inc., supra*, 127 Cal.App.4th at p. 1258 [need to show substantial evidence of any "prejudicial" procedural irregularity].) Plaintiffs do not contend that a second entity is seeking or will seek to foreclose on the same deed of trust at issue here. Beyond general

---

8      Although the Bank's declarant Tobolski states that the Bank physically possesses the subject promissory note, Plaintiffs also argue that the record is not clear on when this possession began, and they contend that its early possession was a prerequisite for a substituted trustee to be appointed. Plaintiffs have no authority for this contention. (See *Debrunner, supra*, 204 Cal.App.4th at pp. 440-441.)

26

assertions of harm, there is no evidence that Plaintiffs have been or will be unfairly disadvantaged if the Bank, through Northwest, is permitted to pursue this nonjudicial foreclosure.

It makes no difference that Plaintiffs claim their expert testimony would show that Defendants' actions in pursuing the foreclosure caused the property to diminish in value, making damages appropriate. Without a showing of liability, there can be no damage recovery. (See *Debrunner*, *supra*, 204 Cal.App.4th at p. 443.) Plaintiffs have failed to raise triable issues of material fact about the Bank's authority to pursue these foreclosure proceedings.

## D. Remaining Causes of Action on Insurance Policy and Privacy Issues

In their third cause of action, Plaintiffs claim it was "insurance fraud" when the Bank canceled the optional insurance policy that they had purchased from it, upon the failure of Plaintiffs to pay the premiums. This insurance was a policy for mortgage disaster protection. For support on this theory of recovery, Plaintiffs rely on the provisions of Civil Code section 2954.6, subdivision (a), which incorporate the definitions set forth in Insurance Code section 12640.02, subdivision (a). According to that Insurance Code subdivision, " '[m]ortgage guaranty insurance' " means: "Insurance against financial loss by reason of nonpayment of principal, interest, and other sums agreed to be paid under the terms of any note or bond or other evidence of indebtedness secured by a mortgage, deed of trust, or other instrument constituting a first lien or charge on real estate, provided the improvement on the real estate is a residential building . . . .' " (Ins. Code, § 12640.02, subd. (a)(1).)

27

Thus, under Civil Code section 2954.6, subdivision (a), "If private mortgage insurance or mortgage guaranty insurance, as defined in subdivision (a) of Section 12640.02 of the Insurance Code, *is required as a condition of a loan secured by a deed of trust or mortgage on real property*, the lender or person making or arranging the loan shall notify the borrower whether or not the borrower has the right to cancel the insurance. If the borrower has the right to cancel, then the lender or person making or arranging the loan shall notify the borrower in writing of [certain identifying loan or insurance information necessary to permit the borrower to communicate with the insurer/lender concerning the insurance, etc.]." (Italics added.) But here, the longtime "Disaster Mortgage" insurance policy was not shown to be required by the terms of the loan, the promissory note or the trust deed held by the Bank. Plaintiffs can make no showing of any remaining triable issues of fact on whether it was a violation of such statutory protections for the Bank to cancel, for nonpayment of premiums, their optional "Disaster Mortgage" insurance, or some other kind of hazard insurance that they allegedly had.

Finally, Plaintiffs' briefs on appeal argue some kind of breach of financial privacy claim, based upon communications by the Bank with third parties. The record is unclear which cause of action was intended to pursue such a theory, if any. In any case, Plaintiffs signed a borrower authorization for the Bank to speak with a representative of Real Property Financial Network, LLC, regarding their loan. Plaintiffs have not shown triable issues remain about any such arguable, but unpled, breach of privacy claims.

28

On the other claims appearing in the FAC, we can only conclude they have been waived through Plaintiffs' failure to pursue them on appeal.  (See fn. 2, *ante*.)  The trial court correctly resolved all the essential legal questions presented by the cross-motions. The summary judgment in favor of the Bank and Northwest is affirmed.

DISPOSITION

Judicial notice is granted as to the merger certificate recorded in the federal office of the comptroller of currency, and the summary judgment is affirmed.  Costs on appeal to Respondents.


HUFFMAN, J.

WE CONCUR:


BENKE, Acting P. J.

McINTYRE, J.