Filed 9/26/13  Chaoui v. Bank of America CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| KHALIL M. CHAOUI,<br><br>　　　　Plaintiff and Appellant,<br><br>　　v.<br><br>BANK OF AMERICA, N.A. et al.,<br><br>　　　　Defendants and Respondents. | B237770<br><br>(Los Angeles County<br>Super. Ct. No. KC 060805) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert A. Dukes, Judge.  Affirmed.

Khalil M. Chaoui, in pro. per., for Plaintiff and Appellant.

Bryan Cave, Robert E. Boone III, Jed P. White and Richard P. Steelman, Jr., for Defendants and Respondents.

\* \* \* \* \* \*

Appellant Khalil M. Chaoui appeals pro se the judgment dismissing his first amended complaint (FAC) without leave to amend after the trial court sustained a demurrer filed by Bank of America, N.A. (BANA); U.S. Bank, N.A. (U.S. Bank), as trustee for the certificate holders of Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2006-7; and ReconTrust Company, N.A. (ReconTrust) (together respondents).  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

In this mortgage foreclosure case, appellant obtained a $576,000 loan from BANA on July 12, 2006, for his residence, secured by a note and deed of trust.  The deed of trust designed BANA as the lender and PRLAP, Inc., as trustee.  Appellant eventually defaulted on the loan due to "economic hardship."  Thereafter in June and July 2010, appellant sent a host of letters (all of which he attached to his complaint) inquiring about his loan and purporting to take several actions related to it.  When he received no responses, he recorded a quitclaim deed and grant deed to himself.  On August 3, 2010, someone also recorded two documents titled "Substitution of Trustee" and "Full Reconveyance," which were purportedly signed by "George Becske" as an "authorized officer" of both BANA and BAC Home Loan Servicing, LP.

On October 5, 2010, BANA recorded a "Rescission of Substitution of Trustee and Full Reconveyance," stating the August 3 recorded documents were not recorded by the trustee of record and were void.  The same day BANA also recorded a "Substitution of Trustee and Assignment of Deed of Trust," substituting ReconTrust as the trustee and U.S. Bank as beneficiary under the deed of trust.  On October 8, 2010, ReconTrust sent appellant a "Debt Validation Notice" pursuant to title 15 United States Code section

---

[1]     We take the facts from appellant's original complaint, which included nearly 200 pages of correspondence and other materials, the FAC, which incorporated by reference the factual allegations and supporting documents in the original complaint, and the documents judicially noticed by the trial court, which appellant does not challenge on appeal.  (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 506 (*Jenkins*).)

1692g,[2] confirming on that date appellant owed $568,541.50 on his loan and notifying appellant he had 30 days from receipt of the notice to dispute the debt. On October 13, 2010, ReconTrust, as agent for beneficiary U.S. Bank, recorded a "Notice of Default" on the property. During this time, appellant continued to send correspondence to respondents (again, all of which he attached to the complaint).

ReconTrust, as trustee, recorded a "Notice of Trustee's Sale" on January 25, 2011, and sold the property at a trustee's sale on February 17, with a "Trustee's Deed Upon Sale" recorded on February 25. Appellant continued to send correspondence to respondents during this time.[3]

On March 21, 2011, appellant filed a verified "Action for Trespass on the Case" against respondents. In that complaint, he alleged claims for (1) intentional fraud; (2) injunctive relief based on Civil Code section 2923.5; (3) declaratory relief; (4) intentional infliction of emotional distress; (5) "promissory note"; and (6) unfair competition.[4] In support of these claims, he alleged respondents committed fraud by concealing the process of selling a promissory note into the mortgage-backed securities market; U.S. Bank did not own the note at the time of foreclosure because there was no recorded assignment or endorsement from the original lender to U.S. Bank and U.S. Bank

---

[2] The notice incorrectly cites title 15 United States Code section 1692(G), which does not exist.

[3] On March 11, 2011, a "Notice of Rescission of a Trustee's Deed Upon Sale" was recorded. Although respondents do not discuss it in their brief, this appears to be fabricated. It was signed by "Steve Flores" as a purported "Appointed Authorized Officer" of ReconTrust. "Steve Flores" also signed the proofs of service of appellant's opening brief and appendices in this appeal and submitted a declaration in support of appellant's application for a temporary restraining order in the trial court, suggesting he was not in fact an authorized officer of ReconTrust.

[4] Appellant also filed various other requests and motions that were denied, rejected, or stricken: an application for a temporary restraining order; a notice of related case for an unlawful detainer action against him by respondents; a writ of error *quae coram nobis residant*; a motion for contempt against Judge Dukes; and requests for default. With the possible exception of the denied contempt motion discussed *post*, he does not challenge these rulings on appeal.

did not have physical possession of the note; and ReconTrust did not have authority to foreclose without a valid assignment. He also attached 28 exhibits comprised of approximately 200 pages of correspondence and other documents discussed above.

Respondents demurred to all of the claims and filed a motion to strike parts of the complaint and a request for judicial notice; the trial court granted the request for judicial notice, sustained the demurrer in its entirety, and denied the motion to strike as moot. The court rejected appellant's "produce the note" theory because it has been "uniformly rejected" by courts and the court found all the claims barred because appellant failed to allege he could tender the debt he owed. The court also rejected the individual claims: the fraud claim failed because appellant failed to identify a misrepresentation and the allegations lacked specificity; the injunction claim failed because appellant's property had already been sold; the intentional infliction of emotion distress claim failed because appellant did not allege outrageous conduct or severe emotional distress; and the declaratory relief and unfair competition claims failed because they were based on the other defective claims. The trial court gave appellant 10 days leave to amend all but the injunctive relief claim, which it dismissed without leave to amend.

Appellant filed his FAC on June 28, 2011, but it added no new facts; instead, it incorporated by reference all the factual allegations in the original complaint and merely realleged claims for intentional fraud, declaratory relief, intentional infliction of emotional distress, and unfair competition. It also added a new claim for breach of the covenant of good faith and fair dealing based on the same general facts. Respondents again demurred to all the claims and filed a motion to strike parts of the FAC and a request for judicial notice; the trial court issued a tentative decision granting the request for judicial notice,[5] sustaining the demurrer in its entirety, and granting the motion to strike. The trial court found appellant failed to address the deficiencies in his original complaint and he was not granted leave to add the new breach of the covenant of good

---

[5]     Appellant has not challenged that ruling on appeal.

faith and fair dealing claim, which in any case was not supported by facts. The trial court indicated it would hear from appellant on the issue of leave to amend.

At the hearing on the demurrer, appellant requested 20 days leave to amend the FAC and the trial judge repeatedly inquired what facts appellant could allege to overcome the defects previously identified. Appellant did not provide any, so the court sustained the demurrer without leave to amend, and denied the motion to strike as moot. The court entered judgment dismissing the FAC and appellant timely appealed.

**DISCUSSION**

*1. Standard of Review*

"When reviewing a court's dismissal of a lawsuit following an order sustaining a demurrer without leave to amend, we initially review the complaint de novo to determine whether, as a matter of law, the complaint alleges a valid cause of action. [Citation.] We assume the truth of all properly pleaded and judicially noticeable material facts within the complaint, but we do not assume """"contentions, deductions or conclusions of fact or law."""" [Citation.] We must read the complaint """"as a whole and its parts in their context"""" in order to ensure that """"we give the complaint a reasonable interpretation . . . ."""" [Citation.]

"If we conclude the complaint fails on any grounds stated in the demurrer, we must then consider whether there is "'a reasonable possibility'" the complaint's defect(s) can be cured by an amendment. [Citation.] If it is apparent the complaint's defects can be cured, the trial court has abused its discretion and we will reverse the judgment. [Citation.] Alternatively, if it is apparent the complaint's defects cannot be cured, no abuse of discretion has occurred and we will affirm the judgment. [Citation.] The burden of proving the reasonable possibility of such a curative amendment falls """"squarely on the plaintiff.' [Citations.]" [Citations.]' [Citation.]

"Furthermore, where the plaintiff requests leave to amend the complaint, but the record fails to suggest how the plaintiff could cure the complaint's defects, 'the question as to whether or not [the] court abused its discretion [in denying the plaintiff's request] is open on appeal . . . .' [Citation.] Because the trial court's discretion is at issue, we are

5

limited to determining whether the trial court's discretion was abused as a matter of law. [Citation.] Absent an effective request for leave to amend the complaint in specified ways, an abuse of discretion can be found '"only if a potentially effective amendment were both apparent and consistent with the plaintiff's theory of the case." [Citation.]' [Citation.]" (*Jenkins, supra*, 216 Cal.App.4th at pp. 506-507.)

## 2. *"Court of Record" and "State Case Law" Arguments*

Appellant's first two questions presented in his opening brief are generally whether the trial court violated article 6, section 1 of the California Constitution and whether Judge Dukes "exceeded his jurisdiction in this court of record by acting as if it was [an] equity proceeding and not a proceeding in common law." In argument sections entitled "Court of Record" and "State Case Law," appellant seems to argue the trial court exceeded its jurisdiction under article 6, section 1 of the California Constitution in dismissing his FAC. We need not parse appellant's somewhat confusing argument on this point. Article 6, section 1 states, "The judicial power of this State is vested in the Supreme Court, courts of appeal, and superior courts, all of which are courts of record." Suffice it to say the trial court properly exercised jurisdiction over appellant's complaint under this provision.[6]

## 3. *Claims in the FAC and Leave to Amend*

In his opening brief, appellant does not address his individual claims for fraud, declaratory relief, intentional infliction of emotional distress, or breach of the covenant of good faith and fair dealing. Indeed, he seems to concede there were "defects" in those claims limited to the "causes of action [themselves] not to the facts that the respondents admitted to committing wrongful acts." Appellant has abandoned these claims for his failure to brief them. (*Pfeifer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th

---

[6] To the extent appellant is attempting to challenge the trial court's denial of his motion for contempt based on similar arguments, that ruling was not directly appealable. (Code Civ. Proc., §§ 1222, 904.1(a)(1)(B); *In re Holmes* (1983) 145 Cal.App.3d 934, 941.) Appellant filed a writ petition in case No. B236962 challenging the denial of his contempt motion on similar grounds, which was denied.

1250, 1282 (*Pfeifer*).)  Nor is he entitled to more lenient treatment because he is pro se. (*Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, 524.)

Appellant appears to primarily argue the trial court should have granted him leave to amend the FAC to reallege his unfair competition claim and to add new claims under Penal Code section 532f, subdivision (a)(4); the federal Fair Debt Collection Practices Act (FDCPA) (15 U.S.C. § 1692g(b)); the federal Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. § 2605(e)); Civil Code sections 1624 and 2932.5; and California Uniform Commercial Code section 3302.  In his original and amended complaints, he cited or alluded to most of these statutes, although he did not set forth separate claims under each one and the trial court did not address them.  Because these claims are not valid, appellant has not shown a reasonable possibility of curing the defects in his complaint and the trial court properly denied leave to amend.

A.  *"Produce the Note" Theory and Authority to Foreclose*

Appellant has either alleged, argued, or alluded to several theories attacking respondents' authority to foreclose on his property, all of which have been rejected in other cases.  For example, appellant alleged respondents should have produced the original note in order to foreclose on his property.  However, "[Civil Code] section 2924, subdivision (a)(1), permits a notice of default to be filed by the 'trustee, mortgagee, or beneficiary, or any of their authorized agents.'  The provision does not mandate physical possession of the underlying promissory note in order for this initiation of foreclosure to be valid." (*Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 440 (*Debrunner*); see also *Jenkins, supra*, 216 Cal.App.4th at p. 512.)  Appellant also suggests the securitization of his loan deprived respondents of the authority to foreclose. However, appellant has no standing to assert that claim.  (*Jenkins, supra*, at pp. 514-515.) And despite appellant's claims to the contrary, respondents did not need to record any assignments in order to exercise the power to sell under a deed of trust.  (Civ. Code, § 2932.5; *Calvo v. HSBC Bank USA, N.A.* (2011) 199 Cal.App.4th 118, 125 (*Calvo*); see also *Jenkins, supra*, at p. 518; *Haynes v. EMC Mortgage Corp.* (2012) 205 Cal.App.4th

7

329, 336; *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1509-1510 (*Herrera*).)

More generally, appellant has alleged no facts to suggest respondents could not validly foreclose on his property after he defaulted on his loan and the documents attached to his complaint and subject to judicial notice demonstrate the foreclosure was proper. BANA was the beneficiary under the deed of trust with the authority to foreclose and to designate ReconTrust as a new trustee. BANA did so on October 1, 2010, along with transferring beneficial interest to U.S. Bank. ReconTrust then validly recorded the Notice of Default on October 13, 2010, as agent of beneficiary U.S. Bank, and validly conducted the trustee's sale on February 17, 2011. (Civ. Code, §§ 2924, subd. (a)(1), 2934a; *Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1055 [finding ReconTrust validly recorded notice of default under § 2924, subd. (a)(1) as trustee and agent of beneficiary].) Thus, these theories cannot support appellant's new claims.

### B. *Penal Code Section 532f, Subdivision (a)(4)*

Penal Code section 532f, subdivision (a)(4) imposes criminal penalties for mortgage fraud: "(a) A person commits mortgage fraud if, with the intent to defraud, the person does any of the following: [¶] . . . [¶] (4) Files or causes to be filed with the recorder of any county in connection with a mortgage loan transaction any document the person knows to contain a deliberate misstatement, misrepresentation, or omission." Appellant cites nothing to support a private right to bring a civil claim for violating this criminal statute. (See *Vikco Ins. Services, Inc. v. Ohio Indemnity Co.* (1999) 70 Cal.App.4th 55, 62-63 ["[A] private right of action exists only if the language of the statute or its legislative history clearly indicates the Legislature *intended* to create such a right to sue for damages. If the Legislature intends to create a private cause of action, we generally assume it will do so '"directly[,] . . . in clear, understandable, unmistakable terms . . . ." [Citation.]' [Citations.]"].) In any case, appellant has identified no facts to demonstrate any knowing and deliberate misstatement or omission. As discussed above, BANA validly substituted ReconTrust as trustee and ReconTrust had the authority to

8

record the notice of default and conduct the foreclosure sale. Thus, even if appellant had a private right of action under Penal Code section 532f, subdivision (a)(4), he has not alleged facts to demonstrate a violation and no amendment would cure that defect.

## C. *FDCPA, Title 15 United States Code Section 1692g(b)*

Appellant argues respondent ReconTrust violated the FDCPA (15 U.S.C. § 1692g(b)) by failing to respond to four debt validation notices he sent between November 2010 and January 2011.[7] The FDCPA was designed "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." (15 U.S.C. § 1692(e); see *Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 996.) The statute therefore prohibits harassing and abusive conduct related to collection (15 U.S.C. § 1692d); false, deceptive, or misleading representations (15 U.S.C. § 1692e); and unfair or unconscionable means of collection (15 U.S.C. § 1692f). It also requires a debt collector to send a consumer a written notice within five days after an initial communication, which must include, among other information, a statement that the consumer has 30 days to dispute the debt. (15 U.S.C. § 1692g(a).) If the debt is timely disputed, "the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector." (15 U.S.C. § 1692g(b).)

The FDCPA only applies to debt collectors engaging in conduct that constitutes "debt collection" under the act. (*Pfeifer, supra*, 211 Cal.App.4th at pp. 1261-1262.) A "debt collector" is generally defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the

---

[7] Although appellant appears to direct this claim at all respondents, he only identifies ReconTrust as a "debt collector" under the FDCPA.

collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another." (15 U.S.C. § 1692a(6); see *Pfeifer, supra*, at p. 1261.) And a "debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." (15 U.S.C. § 1692a(5); see *Pfeifer, supra*, at p. 1261.)

Although there is contrary authority, we agree with the cases holding that "giving notice of a foreclosure sale to a consumer as required by the Civil Code does not constitute debt collection activity under the FDCPA." (*Pfeifer, supra*, 211 Cal.App.4th at pp. 1261-1264 [rejecting FDCPA claim against trustee ReconTrust for undertaking foreclosure process]; see also *Natividad v. Wells Fargo Bank, N.A.* (N.D.Cal. May 24, 2013, No. 3:12-cv-03646 JSC) 2013 WL 2299601, p. *9 (*Natividad*); but see *Glazer v. Chase Home Finance LLC* (2013) 704 F.3d 453, 459-463 [holding mortgage foreclosure is debt collection under the FDCPA].) That is particularly true in this case in which appellant has not alleged respondents demanded payment directly from appellant or otherwise engaged in any debt collection activity beyond undertaking the statutory nonjudicial foreclosure process. (See *Pfeifer, supra*, at p. 1263 & fn. 4; *Natividad, supra*, at p. *9.) While ReconTrust sent appellant a Debt Validation Notice dated October 8, 2010, which cited the FDCPA and stated ReconTrust "may be a debt collector attempting to collect a debt and any information it obtains will be used for that purpose," that notice simply contained the information required by § 1692g(a), i.e., appellant owed $568,541.50 on his mortgage, the creditor was BAC Home Loan Servicing, LP, and appellant must dispute the debt within 30 days of receiving the notice. ReconTrust did not demand payment and the language that ReconTrust may be a debt collector at most reflects "the inconsistency in the caselaw regarding a mortgage foreclosure trustee's FDCPA liability." (*Natividad, supra*, at p. *9 [rejecting same argument based on similar

10

language in notice of default].)[8] Thus, appellant's FDCPA claim fails as a matter of law and appellant cannot reasonably cure the defect by amendment.

*D. RESPA, Title 12 United States Code Section 2605(e)*

Appellant claims BANA[9] violated RESPA (12 U.S.C. § 2605(e)) by failing to respond to his letter sent on June 22, 2010, which he labeled as a "qualified written request" (QWR) under RESPA. Respondents contend this claim fails because appellant's letter did not trigger the response requirement in RESPA and, even if it did, appellant suffered no actual damages as a result of the failure to respond. We find the second point persuasive and need not address the first.

Title 12 United States Code section 2605 of RESPA sets forth requirements for the servicing of mortgage loans, and among other things, requires a loan servicer to respond to a QWR from a borrower. (*Jenkins, supra*, 216 Cal.App.4th at p. 530.) When violated, the statute permits a borrower to obtain any "actual damages to the borrower as a result of the failure" and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of [RESPA], in an amount not to exceed $1,000." (§ 2605(f)(1); see 12 C.F.R. § 1024.21(f)(1)(i); *Jenkins, supra*, at p. 531.)[10]

---

[8] The January 21, 2011 Notice of Trustee's Sale indicated ReconTrust "is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose." Although stated more firmly, this still does not indicate ReconTrust was legally engaged in debt collection under the FDCPA.

[9] The record is not clear, but it appears BAC Home Loan Servicing, LP was the loan servicer, which appellant alleged was a "subdivision" of BANA. Appellant directs his RESPA arguments to BANA, so we will assume BANA was the servicer for purposes of this appeal. As respondents correctly note, neither U.S. Bank nor ReconTrust can be liable for RESPA violations because they were not loan servicers. (*Medrano v. Flagstar Bank, FSB* (2012) 704 F.3d 661, 667 ["[O]nly servicers of loans are subject to [12 U.S.C.] § 2605(e)'s duty to respond . . . ."].)

[10] The Dodd-Frank Wall Street Reform and Consumer Protection Act increased the penalty for a pattern or practice from $1,000 to $2,000, but that change does not go into effect until January 2014. (Pub.L. No. 111-203 (July 21, 2010) 124 Stat. 1376, 2136, 2183-2184; *Berneike v. CitiMortgage, Inc.* (10th Cir. 2013) 708 F.3d 1141, 1145, fn. 3.)

"[F]ederal courts have read 12 United States Code section 2605 as requiring a plaintiff to plead specific facts showing both the defendant's failure to respond and the plaintiff's suffering of 'pecuniary damages' in order to avoid the dismissal of his or her RESPA claim. [Citations.]" (*Jenkins, supra*, 216 Cal.App.4th at pp. 531-532.) In *Jenkins*, the court found no RESPA violation because, rather than resulting from a RESPA violation, the plaintiff's actual damages "result[ed] from her admitted default on her loan and/or her attempts to dispute the validity of the promissory note and the security interest created by the deed of trust." (*Id.* at p. 532.) She admitted as much, given she sent the QWR letter after her default and the receipt of the notice of default. (*Id.* at p. 533.) As a result, she failed to allege her claimed damages "were plausibly incurred because of the alleged RESPA violation, and were not the consequences of her earlier default." (*Ibid.*) Nor did the plaintiff sufficiently allege a pattern or practice of RESPA violations from a single failure to respond to a QWR. (*Ibid.*)

As in *Jenkins*, appellant has not identified any damages he incurred as a result of alleged RESPA violations as opposed to his default on his loan. In his QWR, he essentially requested all records related to his loan and a full accounting of all payments and fees on his loan, but by the time he sent the letter in June 2010, he had already stopped making payments on his loan due to alleged "economic hardship." He does not claim he failed to make his payments because of issues with the servicing of his loan or that he would have made future payments if BANA had given him the servicing information he requested. Like the appellant's damages in *Jenkins*, any damages here stemmed from appellant's failure to pay his mortgage, not BANA's violation of RESPA. He also alleged he sent only one QWR, so he has not identified a pattern or practice justifying statutory damages. Thus, his RESPA claim fails and he cannot reasonably cure the defects by amendment.

*E. Civil Code Sections 1624 and 2932.5, and California Uniform Commercial Code Section 3302*

Without discussion, appellant cites Civil Code sections 1624 and 2932.5, as well as California Uniform Commercial Code section 3302. We find any arguments based on

these statutory provisions waived for failure to support them with reasoned argument. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*).)  In any case, appellant cannot state a claim under any of these provisions.  Civil Code section 1624 codifies the statute of frauds, but appellant does not identify any oral agreement that was required to be in writing.  Civil Code section 2932.5 requires the recording of an assignment of the power to sell under a mortgage, but it does not require the recordation of assignments to invoke the power of sale under a deed of trust.  (*Calvo, supra*, 199 Cal.App.4th at p. 125.)  Finally, California Uniform Commercial Code section 3302 defines the "holder in due course" of a negotiable instrument, but Commercial Code provisions dealing with negotiable instruments do not apply to California's comprehensive nonjudicial foreclosure scheme.  (*Debrunner, supra*, 204 Cal.App.4th at pp. 440-441.)

## F.  *Business and Professions Code Section 17200*

The Unfair Competition Law (UCL), Business and Professions Code section 17200, "creates '"three varieties of unfair competition -- acts or practices which are unlawful, or unfair, or fraudulent,"'" and the unlawful prong "'""borrows"'"" violations of other laws and makes them independently actionable under the UCL.  (*Jenkins, supra*, 216 Cal.App.4th at p. 520.)  Appellant lists several allegedly unlawful, unfair, and fraudulent acts committed by respondents in violation of the UCL, some of which are derivative of the claims we have rejected above and some of which he mentions for the first time (e.g., violating the "Security First Rule," reporting payments late to credit bureaus, and violating Civ. Code, § 1095).  To the extent this claim rests on the same violations discussed above, it fails because the underlying claims fail.  (*Price v. Starbucks Corp.* (2011) 192 Cal.App.4th 1136, 1147.)  To the extent appellant attempts to raise new claims without supporting argument, those contentions are waived.  (*Cahill, supra*, 194 Cal.App.4th at p. 956.)

## G. *Tender and Prejudice Arguments*

Because we have found appellant has advanced no cognizable legal theories to support leave to amend his FAC, we need not also address respondents' arguments that

13

appellant was required to tender the balance due on his loan (*Jenkins, supra*, 216 Cal.App.4th at p. 535) or that appellant suffered no prejudice from any alleged violations in the foreclosure process (*Herrera, supra*, 205 Cal.App.4th at p. 1507; *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 272).

## DISPOSITION

The judgment is affirmed. Respondents are entitled to costs on appeal.


FLIER, J.

I CONCUR:


BIGELOW, P. J.

RUBIN, J. - CONCURRING

I concur in the judgment.

RUBIN, J.