[No. H036379. Sixth Dist. Mar. 16, 2012.]

STEPHEN GEORGE DEBRUNNER, Plaintiff and Appellant, v.
DEUTSCHE BANK NATIONAL TRUST COMPANY et al., Defendants
and Respondents.

434

COUNSEL

Thomas Spielbauer for Plaintiff and Appellant.

Wolfe & Wyman, Stuart B. Wolfe and Marcus T. Brown for Defendants and Respondents.

OPINION

ELIA, J.—Plaintiff Stephen George Debrunner sought a declaratory judgment and quiet title to property on which nonjudicial foreclosure proceedings had been initiated by respondents Deutsche Bank National Trust Company (Deutsche Bank), its loan servicer, and its foreclosure trustee. The superior court sustained respondents' demurrer to the first amended complaint without leave to amend. Plaintiff appeals, contending that an assignment of a deed of trust is of no legal effect without the actual transfer of the corresponding promissory note and therefore cannot support nonjudicial foreclosure by the assignee. Plaintiff further contends that the notice of default in this case was defective for inadequately identifying Deutsche Bank as the beneficiary and prematurely naming the trustee. We will affirm the judgment.

*Background*

Because this appeal arises from the sustaining of a demurrer, we summarize the underlying facts as they are stated in the operative pleading, the first amended complaint. Toward this end "we accept as true the properly pleaded material factual allegations of the complaint, together with facts that may properly be judicially noticed." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 672 [34 Cal.Rptr.2d 386, 881 P.2d 1083]; see *Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479].)

Plaintiff alleged that he was a private investor who, along with others, extended a $675,000 loan in March 2006 to Barbara Chiu and Shimin Xu, secured by a deed of trust on a home in Los Altos. Chiu executed a promissory note and second deed of trust in favor of plaintiff and his co-investors.

At this time Chiu was already a trustor on a first deed of trust on the property, having borrowed $975,000 from Quick Loan Funding, Inc. (Quick Loan), in June 2004. The trustee named on that deed of trust was Chicago Title Company. The following month Quick Loan assigned the deed of trust and Chiu's promissory note to Option One Mortgage Corporation (Option One), which shortly thereafter assigned both interests to FV-1, Inc.

The final assignment of the deed of trust was from FV-1 to Deutsche Bank, with respondent Saxon Mortgage Services, Inc. (Saxon), acting as "Attorney in Fact." This document bore three dates: September 2, 2008, when the assignment was originally executed; September 21, 2009, when it was notarized; and January 5, 2010, when it was recorded.

In January 2008, plaintiff and his co-investors filed a notice of default, and in April they scheduled a trustee's sale for the following month. In June Chiu's business entity filed for chapter 11 bankruptcy protection. The bankruptcy court thereafter granted plaintiff and the co-investors' motion for relief from the bankruptcy stay, and in March 2009 they foreclosed and obtained a trustee's deed upon sale for the property.

In August 2008, however, well before the sale was completed, Saxon, the servicer of the first-position loan, filed a notice of default on the property. Because of the bankruptcy proceeding, however, the notice was rescinded. In July 2009 Deutsche Bank moved for relief from the bankruptcy stay in order to file a new notice of default. That motion was taken off calendar when the bankruptcy matter was closed in August 2009.

On September 15, 2009, the foreclosure trustee, Old Republic Default Management Services (Old Republic), recorded a new notice of default on the property. In the accompanying Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788) notice, Old Republic named Deutsche Bank as the creditor and Saxon as its "attorney-in-fact." The notice informed the debtor that payment to stop the foreclosure could be made to Saxon, and it provided Saxon's address and telephone number. On January 5, 2010, the same day the assignment from FV-1 to Deutsche Bank was recorded, the county recorded a

"Substitution of Trustee" from Chicago Title Company to Old Republic. This document had been signed and notarized on September 2, 2008, by Saxon on behalf of Deutsche Bank.

Plaintiff commenced this action in November 2009 to stop the impending foreclosure, naming Deutsche Bank, Saxon, and Old Republic. In his first amended complaint in April 2010, he specifically sought a declaration of multiple facts—in particular, that defendants had no right to foreclose because Deutsche Bank did not have physical possession of or ownership rights to the original promissory note. Plaintiff further sought to quiet title to the property and remove the first deed of trust in favor of Quick Loan.

Deutsche Bank and Saxon demurred on multiple grounds, primarily the absence of facts indicating a violation of nonjudicial foreclosure procedures. Defendants specifically argued, for instance, that possession of the original note was not required under the applicable statutes, Civil Code section 2924 et seq.[1] In response, plaintiff maintained that any assignment of the deed of trust was immaterial because a deed of trust "cannot be transferred independently" of the promissory note, which must be "properly assigned" and attached. According to plaintiff, "[a] deed of trust standing alone is a nullity," and thus cannot provide authority for a lender to foreclose. Plaintiff relied on several sections of the California Uniform Commercial Code pertaining to negotiation, transfer, indorsement, and enforcement of negotiable instruments. (See Cal. U. Com. Code, §§ 3104, 3109, 3201–3205, 3301, 9313.)

Although he had alleged Old Republic to be the foreclosure trustee, plaintiff further argued in opposition to the demurrer that neither Saxon nor Old Republic had any right to initiate foreclosure because there was no proper "chain of assignment" from Option One to Saxon or to Old Republic, as required under section 2934a. He noted that Quick Loan had assigned the deed of trust, but not the note, to Option One, which thereafter assigned the deed of trust to FV-1 and eventually to Deutsche Bank. These assignments, he maintained, were "of no value" and invalid because they were not accompanied by assignment of the promissory note. In other words, the deed of trust and the note "must remain married and joined to each other for a secured debt to exist. Once they are divorced, or widowed, as has happened in this case, the deed of trust becomes a nullity and the promissory note an unsecured debt. Neither carry [*sic*] the right to foreclosure."

This assertedly defective assignment of the note formed the basis of plaintiff's additional claim that respondents had not complied with section 2943, subdivision (b)(1), which requires the beneficiary in a foreclosure

---

[1] All further unspecified statutory references are to the Civil Code.

proceeding to produce a copy of the note "or other evidence of indebtedness" upon demand. Deutsche Bank, plaintiff explained, could not produce the note because it did not have it; instead, they "have unlawfully attempted a theft of [the property] and are now desperately attempting to conceal this attempted larceny."

The superior court was not convinced by plaintiff's position. Responding to plaintiff's assertion that Deutsche Bank was not the proper assignee and therefore not entitled to sell the property under section 2932.5, the court looked to plaintiff's pleading itself, to which was attached three recorded assignments proceeding from Quick Loan to Option One to FV-1 to Deutsche Bank. Because those assignments conveyed all beneficial interest in the deed of trust, "[t]ogether with the note or notes therein described or referred to," a chain of title had been established on the face of the first amended complaint. The court also rejected plaintiff's assertion that physical possession of the promissory note was a precondition to nonjudicial foreclosure, citing federal district court decisions. Addressing plaintiff's claims of noncompliance with section 2932.5, subdivision (b) of section 2934a, and subdivision (b)(1) of section 2943, the superior court deemed these challenges to be meritless or nonprejudicial. It then sustained respondents' demurrer without leave to amend. Plaintiff filed a timely notice of appeal from the ensuing judgment of dismissal.

*Discussion*

1. *Scope and Standard of Review*

Because plaintiff misstates the standard by which we review the challenged order, we briefly revisit the applicable principles. A demurrer is properly sustained when the complaint "does not state facts sufficient to constitute a cause of action," or where the court "has no jurisdiction of the subject of the cause of action alleged in the pleading." (Code Civ. Proc., § 430.10, subds. (e), (a).) "On appeal from a dismissal following the sustaining of a demurrer, this court reviews the complaint de novo to determine whether it alleges facts stating a cause of action under any legal theory. . . . [¶] Because the function of a demurrer is not to test the truth or accuracy of the facts alleged in the complaint, we assume the truth of all properly pleaded factual allegations. [Citation.] Whether the plaintiff will be able to prove these allegations is not relevant; our focus is on the legal sufficiency of the complaint." (*Los Altos Golf & Country Club v. County of Santa Clara* (2008) 165 Cal.App.4th 198, 203 [80 Cal.Rptr.3d 340], italics omitted; see also *Landmark Screens, LLC v. Morgan, Lewis & Bockius, LLP* (2010) 183 Cal.App.4th 238, 243–244 [107 Cal.Rptr.3d 373].) "Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank v. Kirwan*

(1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) We do not, however, assume the truth of "mere contentions or assertions contradicted by judicially noticeable facts." (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20 [40 Cal.Rptr.3d 205, 129 P.3d 394]; see also *Blatty v. New York Times Co.* (1986) 42 Cal.3d 1033, 1040 [232 Cal.Rptr. 542, 728 P.2d 1177] ["when the allegations of the complaint contradict or are inconsistent with such facts, we accept the latter and reject the former"].)

The standard of review recited by plaintiff does not come into play except in determining whether the court erred in refusing to allow amendment of the pleading. We evaluate that ruling for abuse of discretion, even though plaintiff made no amendment request below. (Code Civ. Proc., § 472c, subd. (a); *Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711 [113 Cal.Rptr.2d 399].) "If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. . . . If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. . . . The plaintiff has the burden of proving that an amendment would cure the defect." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569], citations omitted; see *Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.)

2. *Deutsche Bank's Right to Foreclose*

Of the claims in his first amended complaint, plaintiff directs his arguments on appeal primarily to the validity of the assignment to Deutsche Bank and the necessity that a promissory note be produced to effectuate a foreclosure.[2] Plaintiff again contends that an assignee must physically receive the promissory note and endorse it, or an assignment is "completely ineffective" and "a legal nullity." The beneficiary must then have physical possession of the original note in order to initiate nonjudicial foreclosure proceedings.

Plaintiff further contends that a notice of default under section 2924c, subdivision (b)(1), must identify the beneficiary, not just the "servicer." Strict compliance with this provision is necessary, plaintiff argues; "[t]he i's must be dotted and the t's crossed." Because prejudice need not be shown, says plaintiff, the failure to provide the beneficiary's name and contact information

---

[2] Plaintiff concedes, for example, that Saxon complied with section 2943(b)(1) by providing the documentary evidence of indebtedness in response to plaintiff's demand. And as noted in our discussion of the notice of default, *post*, plaintiff also abandons his claim of noncompliance with section 2932.5.

in this case, along with the premature identification of Old Republic as the foreclosure trustee, has invalidated the entire proceeding.

### a. Status of Deutsche Bank as Beneficiary

Plaintiff raises several issues related to the validity of the transfer of the deed of trust, but his position on most of them is predicated on a single contention, that no foreclosure of a deed of trust is valid unless the beneficiary is in possession of the underlying promissory note. Without such possession, the deed of trust is "severed" from the promissory note and consequently is of no effect. Plaintiff submits that we must look to the California Uniform Commercial Code for guidance, because a promissory note is a negotiable instrument which cannot be assigned without a valid endorsement and physical delivery to the assignee.

■ As the parties recognize, many federal courts have rejected this position, applying California law. All have noted that the procedures to be followed in a nonjudicial foreclosure are governed by sections 2924 through 2924k, which do not require that the note be in the possession of the party initiating the foreclosure. (See, e.g., *Geren v. Deutsche Bank National* (E.D.Cal., Aug. 12, 2011, No. CV F 11-0938 LJO GSA) 2011 WL 3568913; *Kolbe v. JP Morgan Chase Bank N.A.* (N.D.Cal., Oct. 13, 2011, No. C 11-01532 SI) 2011 WL 4965065; *Hague v. Wells Fargo Bank, N.A.* (N.D.Cal., Aug. 2, 2011, No. C11-02366 TEH) 2011 WL 3360026, p. *3; *Impink v. Bank of America* (S.D.Cal., Sept. 6, 2011, No. 11cv0104 BTM(WMc)) 2011 WL 3903197.) We likewise see nothing in the applicable statutes that precludes foreclosure when the foreclosing party does not possess the original promissory note. They set forth "a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust. The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830 [30 Cal.Rptr.2d 777].) ■ Notably, section 2924, subdivision (a)(1), permits a notice of default to be filed by the "trustee, mortgagee, or beneficiary, or any of their authorized agents." The provision does not mandate physical possession of the underlying promissory note in order for this initiation of foreclosure to be valid.

■ Plaintiff's reliance on the California Uniform Commercial Code provisions pertaining to negotiable instruments is misplaced. "The comprehensive statutory framework established [in sections 2924 to 2924k] to govern nonjudicial foreclosure sales is intended to be exhaustive." (*Moeller v.*

*Lien, supra,* 25 Cal.App.4th at p. 834; see also *I. E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 285 [216 Cal.Rptr. 438, 702 P.2d 596] ["These provisions cover every aspect of exercise of the power of sale contained in a deed of trust."].) "Because of the exhaustive nature of this scheme, California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute." *(Lane v. Vitek Real Estate Industries Group* (E.D.Cal. 2010) 713 F.Supp.2d 1092, 1098; accord, *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154–1157 [121 Cal.Rptr.3d 819] [no statutory right to sue to determine authority of a lender's nominee to initiate foreclosure; and in any event, plaintiff agreed in deed of trust that nominee had such authority].) "There is no stated requirement in California's non-judicial foreclosure scheme that requires a beneficial interest in the Note to foreclose. Rather, the statute broadly allows a trustee, mortgagee, beneficiary, or any of their agents to initiate non-judicial foreclosure. Accordingly, the statute does not require a beneficial interest in both the Note and the Deed of Trust to commence a non-judicial foreclosure sale." *(Lane v. Vitek Real Estate Industires Group, supra,* 713 F.Supp.2d at p. 1099.) Likewise, we are not convinced that the cited sections of the California Uniform Commercial Code (particularly § 3301) displace the detailed, specific, and comprehensive set of legislative procedures the Legislature has established for nonjudicial foreclosures. (See *Spence v. Wells Fargo Bank, N.A.* (E.D.Cal., May 3, 2011, No. 1:10-cv-02057-OWW-GSA) 2011 WL 1668320, p. *2 [Cal. U. Com. Code, § 3301 has "no application in the instant context of real property financing"]; accord, *Das v. WMC Mortgage Corp.* (N.D.Cal., June 8, 2011, No. C10-0650 PSG) 2011 U.S.Dist. Lexis 77414; see also *Padayachi v. IndyMac Bank* (N.D.Cal., Oct. 28, 2010, No. C 09-5545 JF (PVT)) 2010 U.S.Dist. Lexis 120963, p. *9 ["Although Article 3 of the UCC governs negotiable instruments, it does not apply to nonjudicial foreclosure under deeds of trust."]; accord, *Germon v. BAC Home Loans Servicing, L.P.* (S.D.Cal., Feb. 22, 2011, No. 10cv2482 BTM(POR)) 2011 U.S.Dist. Lexis 17084.)

Plaintiff has referred us to the recent appellate bankruptcy decision in *In re Veal* (9th Cir. Bankr. 2011) 450 B.R. 897. He directs us to that opinion as an application of comparable provisions of Arizona law and urges the same analysis under California's Uniform Commercial Code. We are not persuaded. The analysis of the court in *Veal* was directed at the question of whether Wells Fargo Bank had standing to seek relief from an automatic bankruptcy stay. The loan at issue was a mortgage, of which enforcement was governed by Illinois law (where the property was located), while the note was deemed to fall within the province of Arizona law. It was the bank's burden to demonstrate a right to enforce the mortgage securing the note, and it failed,

as it could not show that it was a "holder" or some other "person entitled to enforce" the note. (450 B.R. at p. 911.) The parties had stipulated that the California Uniform Commercial Code applied to these issues, and the court proceeded on that assumption without questioning the soundness of the premise. (450 B.R. at pp. 908–909.)

The *Veal* court applied the rule urged by plaintiff in the present appeal—that is, that " '[a]n assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity.' " (*In re Veal, supra,* 450 B.R. at p. 916.) In doing so, however, the court noted the departure from this rule by some statutes in other states, specifically citing section 2924 and cases arising in California.[3] Thus, the court implicitly acknowledged that under California's statutory scheme, the original note need not be produced to initiate a valid nonjudicial foreclosure. (450 B.R. at p. 917.)

Even if the California Uniform Commercial Code provisions regarding negotiable instruments somehow imposed superseding legal constraints on lenders seeking a "quick, inexpensive and efficient remedy" through nonjudicial foreclosure (*Moeller v. Lien, supra,* 25 Cal.App.4th at p. 832), plaintiff's allegations still could not withstand dismissal. Again the distinction between this case and *Veal* is noteworthy. The assignment of the mortgage to Wells Fargo had been insufficient to transfer the note as well as the mortgage. The court contrasted this "purported" assignment with that made to Wells Fargo's predecessor, which explicitly assigned " 'the note(s) and obligations therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.' " (*In re Veal, supra,* 450 B.R. at pp. 905, 904.) The subsequent assignment to Wells Fargo, however, only "referred to" the note as part of its description of the mortgage it was identifying. (*Id.* at p. 905.) In the instant case, however, the assignment of the deed of trust from FV-1 to Deutsche Bank stated that it was an assignment of "all beneficial interest" under the deed of trust, "TOGETHER with the note or notes therein described and secured thereby, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust . . . ." This language is similar to the transfer language found acceptable in *Veal* to transfer the note to Wells Fargo's predecessor.

---

[3] The court also commented that "[u]ltimately, the minimum requirements for the initiation of foreclosures under applicable nonbankruptcy law will shape the boundaries of real party in interest status . . . with respect to relief from stay matters. As a consequence, the result in a given case may often depend upon the situs of the real property in question." (*In re Veal, supra,* 450 B.R. at p. 917, fn. 34.)

b. *Notice of Default*

■ Plaintiff complains that the notice of default was defective because (1) it did not identify the beneficiary and (2) it listed Old Republic as the trustee even though there was no recorded substitution of this entity as trustee at that time.[4] With regard to the first protest, he acknowledges that an attached page, the Rosenthal Fair Debt Collection Practices Act notice, did identify Deutsche Bank as the creditor, but he points out that Deutsche Bank's address and telephone number were not listed. That attached notice did, however, identify Saxon, the servicer, as Deutsche Bank's "attorney-in-fact," and the notice of default itself listed Saxon's address and telephone number. Moreover, as the superior court pointed out, no conceivable prejudice is either shown or asserted. As the First Appellate District, Division One, recently stated, "a plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate [that] the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests." (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 272 [129 Cal.Rptr.3d 467], citing *Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1258 [26 Cal.Rptr.3d 413] [presumption that nonjudicial foreclosure sale was conducted regularly and fairly may be rebutted only by substantial evidence of "prejudicial procedural irregularity"].)

Plaintiff does not provide authority to the contrary. Instead, he invokes the Perata Mortgage Relief Act of 2008, Senate Bill No. 1137 (2007–2008 Reg. Sess.), for the sole proposition that strict compliance with foreclosure procedures is required. He does not explain how that law, particularly section 2923.5, subdivision (b), is directly relevant to this case; he even concedes that section 2923.5 is inapplicable because the property was not owner occupied. (§ 2923.5, subd. (i).) Plaintiff apparently relies on this provision only to demonstrate "how fast and loose (or at least sloppy) with the facts respondents are, even when they are submitting recorded documents and seizing homes."

Plaintiff's resort to "strict compliance" is unavailing. Even if we were to read such a rule into the inapposite section 2923.5 and apply it by analogy to the present circumstances, plaintiff would still be unable to articulate how any technical defect resulted in prejudice to him. As for the premature substitution of Old Republic, the superior court observed, section 2934a provides for the situation in which a substitution of trustee is *executed* but is not *recorded*

---

[4] Although Old Republic identified itself as the trustee in the September 2009 notice of default, the substitution of trustee from Chicago Title Company (the original trustee) to Old Republic was not recorded until January 5, 2010. We took judicial notice of the document evidencing the substitution.

until after the notice of default is recorded. (§ 2934a, subd. (b).)[5] Moreover, there was no allegation in the first amended complaint that plaintiff's ability to contest or avert foreclosure was impaired. Even in his opposition to the demurrer and on appeal he has not identified the harm he suffered from any asserted violation of section 2934a, subdivision (b), again preferring to assume that he is entitled to judgment without any showing of prejudice. Upon closer examination, plaintiff's challenge under section 2934a appears to be premised on the previously asserted defects in the chain of assignments and the absence of "lawful ownership" of the note. As we have already found this position to be without merit, we likewise find no grounds for reversal by resorting to section 2934a.

Plaintiff does not offer any separate reasons for finding a viable cause of action for quiet title, his second cause of action, in the face of respondents' foreclosure efforts. The only mention of this claim is in his reply brief, where he merely asserts his legal right to the property under the trustee's deed upon sale and notes that he pleaded this right along with the adverse claim. To the extent that his position depends on the invalidity of the assignment, it falls with the cause of action for declaratory relief, as he did not show title free and clear of the first deed of trust.

Plaintiff also has suggested no basis for finding an abuse of discretion in the court's decision not to allow further amendment. In his opening brief he does not even raise this issue; instead, he relies on his conviction that the allegations in the first amended complaint stated a viable legal theory for relief. Even in his reply brief, belatedly, he merely asserts the intention to add "multiple tort causes of action as well as an action for unfair business practices," to respond to respondents' "fraud."[6] No additional facts are offered as potential supporting allegations beyond respondents' tardy supplement to the record of the document substituting Old Republic as trustee. Thus, even if plaintiff had not forfeited this issue by failing to raise it in his opening brief, he still has not demonstrated how his pleading can be amended to state a viable claim. As plaintiff suggests no reasonable possibility that the defects in the first amended complaint can be cured by further amendment, we find no abuse of discretion in the superior court's decision not to grant leave to amend.

---

[5] Section 2934a, subdivision (b) states, "If the substitution is executed, but not recorded, prior to or concurrently with the recording of the notice of default, the beneficiary or beneficiaries or their authorized agents shall cause notice of the substitution to be mailed prior to or concurrently with the recording thereof, in the manner provided in Section 2924b, to all persons to whom a copy of the notice of default would be required to be mailed by the provisions of Section 2924b. An affidavit shall be attached to the substitution that notice has been given to those persons and in the manner required by this subdivision."

[6] These new claims would include "cancellation of recorded instruments, recording of false documents, attempted unlawful foreclosure, attempted conversion, and other causes of action."

*Disposition*

The judgment of dismissal is affirmed.

Rushing, P. J., and Premo, J., concurred.

A petition for a rehearing was denied April 6, 2012, and appellant's petition for review by the Supreme Court was denied June 13, 2012, S201673.