Filed 12/4/13  Keefe v. Arbuckle CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| HOWARD M. KEEFE, as Trustee, etc., | |
| Plaintiff and Respondent, | C068492 |
| v. | (Super. Ct. No. CV031382) |
| SCOTT E. ARBUCKLE, as Trustee, etc., | |
| Defendant, Cross-complainant and Respondent; | |
| ALBERT SEASTRAND et al., | |
| Defendants, Cross-defendants and Appellants. | |

Plaintiff Howard M. Keefe, as trustee of the Sunrise Trust, and defendant Scott Arbuckle, as trustee of the Arbuckle Trust, separately invested in the construction of a Stockton house.  Both received and recorded assignments of deeds of trust securing their

1

investments.  Arbuckle subsequently pursued nonjudicial foreclosure proceedings without notifying Keefe, and bought the property for less than half of its appraised value. Keefe's interest was wiped out by the sale.

In pursuing nonjudicial foreclosure, Arbuckle retained defendant California Foreclosure, LLC (which was owned and operated by defendants Albert and Loretta Seastrand) to conduct the trustee's sale.  The Seastrands were aware of the recorded junior interests held by Keefe and Monique Bjorndal, another investor, and knew they were entitled to notice before the sale.  But Keefe claimed the Seastrands back-dated and falsified their proof of compliance with the statutory notice requirement.

After Arbuckle sold the property to others, Keefe sued to set aside the sale and reinstate his trust deed.  Keefe later amended his complaint to seek damages and to add allegations of intentional misconduct.  Before trial, Keefe assumed Bjorndal's interest in the property.

A jury found defendants liable to Keefe for fraud and other torts.  Keefe was awarded $442,500 in general damages, and California Foreclosure and the Seastrands were ordered to pay $57,500 in punitive damages.

California Foreclosure and the Seastrands (collectively the Seastrands) now contend (1) Keefe is not a holder in due course of the relevant promissory note, and thus he has no standing in this action; (2) the note and trust deed that Keefe acquired from Bjorndal were both fabricated; and (3) the trial court erred in excluding evidence regarding whether Keefe was a holder in due course.

We conclude Keefe has standing and a basis to sue.  The Civil Code requires prior notice to others in the chain of title as a condition of conducting a trustee's sale.  (Civ. Code, § 2924b.)  Lack of notice is substantial and prejudicial and can give rise to legal action, and when a senior lienholder conducts a nonjudicial foreclosure sale in a manner that includes material irregularities, tort remedies are available to the junior lienholder.

2

Under these circumstances, the trial court did not err in excluding evidence regarding whether Keefe was a holder in due course.

We will affirm the judgment.

BACKGROUND

Michael Erb was a Stockton real estate broker who owned or controlled several legal entities, including St. Andrews Partners and Yolland & Co. Through a series of transactions, Erb obtained hundreds of thousands of dollars from Arbuckle, Keefe and other investors. In return, he and the entities he controlled issued a series of promissory notes, deeds of trust and assignments of deeds of trust encumbering a Stockton residential property owned by St. Andrews Partners.

In exchange for $300,000, Erb gave Keefe a note secured by a deed of trust (the Yolland note), with a face value of $350,000, along with an assignment of deed of trust conveying trust deeds Erb apparently issued on behalf of St. Andrews Partners in favor of Yolland & Co. Keefe recorded the assignment of deed of trust. Arbuckle's interest, also described as an assignment of deed of trust from Yolland & Co. and securing a debt of $105,000, had been recorded more than two years before Keefe recorded his interest.

Arbuckle subsequently recorded a notice of default and a substitution of trustee naming California Foreclosure as the new trustee. At the time California Foreclosure began preparations for Arbuckle's foreclosure sale, four different secured interests were recorded against the property. Arbuckle held the second and Keefe held the third.[1]

Arbuckle was the only bidder at the June 17, 2005 sale, and he bought the property for $493,863.40. The value of the property at the time of sale was $1,325,000. Keefe

---

[1] Counsel informed the trial court that Erb was convicted of securities fraud some time before trial. Citing Evidence Code section 352, the trial court did not permit the jury to hear arguments or testimony about Erb's criminal case.

3

testified that if he had known about the trustee's sale, he would have been prepared to bid $1,000,000 for the property.[2]

The trial court denied competing motions for summary adjudication. One of the bases for the motion by the Seastrands was a challenge to Keefe's standing to sue; the Seastrands claimed the Yolland note was a nullity because it failed to comply with the law of negotiable instruments.

The Seastrands asserted Keefe's lack of standing again in opposition to Keefe's motion in limine seeking to exclude evidence regarding defects in the Yolland note. The trial court granted Keefe's motion in limine.

Keefe presented evidence at trial that he had invested $300,000 in exchange for his $350,000 recorded interest. Keefe also presented evidence that Monique Bjorndal had invested a similar amount in what she initially understood as a partnership with Erb, but that, in lieu of a share of profits, she had accepted a $100,000 promissory note secured by a fourth-position deed of trust. Before trial, Keefe assumed Bjorndal's interest in the property. Keefe and Bjorndal received nothing from the proceeds of the trustee's sale; the combined loss was $450,000.

After closing arguments, the Seastrands moved for directed verdict, arguing once again that Keefe lacked standing due to the defective promissory note. The trial court denied the motion for directed verdict.

The jury found Arbuckle, California Foreclosure and each of the Seastrands liable. Keefe was awarded $442,500 in general damages, and California Foreclosure and the Seastrands were ordered to pay $57,500 in punitive damages.

---

[2] "A foreclosure by trustee's sale wipes out all junior encumbrances." (Greenwald & Bank, Cal. Practice Guide: Real Property Transactions (The Rutter Group 2013) ¶ 6:518, pp. 6-96.4 to 6-96.5, italics omitted.)

4

Additional facts will be included in the discussion as relevant to the contentions on appeal.

DISCUSSION

The Seastrands contend Keefe is not a holder in due course of the Yolland promissory note, and thus Keefe has no standing to enforce his claims in this action. They also claim undisputed evidence proves that the note and trust deed Keefe acquired from Bjorndal were both fabricated, and thus he obtained no rights from those documents. In addition, the Seastrands claim the trial court erred in excluding evidence regarding the defects in the Yolland note.

A

We begin with the challenge to the Yolland note and the Bjorndal note and deed of trust. Essentially, the Seastrands argue that the law of commercial transactions trumps the law of nonjudicial foreclosure. They claim Keefe has no standing to complain about lack of notice under Civil Code section 2924b unless he can first prove that he is a holder in due course of the negotiable instrument secured by the recorded deed of trust.

The right to notice of default and notice of sale in a nonjudicial foreclosure proceeding is defined in Civil Code section 2924b, subdivision (c)(2), which provides in relevant part:

"(2) The persons to whom notice shall be mailed under this subdivision are: [¶] . . . [¶]

"(B) The beneficiary or mortgagee of any deed of trust or mortgage recorded subsequent to the deed of trust or mortgage being foreclosed, or recorded prior to or concurrently with the deed of trust or mortgage being foreclosed but subject to a recorded agreement or a recorded statement of subordination to the deed of trust or mortgage being foreclosed.

"(C) The assignee of any interest of the beneficiary or mortgagee described in subparagraph (B), as of the recording date of the notice of default."

Before 1977, trustees were required to give notice only to persons specified in the security instrument and those who had recorded a special notice request; the requirement to send notices to all holders of deeds of trust was added in 1977 to " 'reduce harshness' " where an interest holder had not filed a special request. (*Estate of Yates* (1994) 25 Cal.App.4th 511, 519.) In other words, the notice requirement was adopted to protect junior lienholders who might not otherwise know they were at risk of having their liens extinguished by a sale of the property.

Keefe's second amended complaint alleged that Arbuckle bought the secured property for under $500,000 at a sale conducted by the Seastrands. The complaint further alleged that the Seastrands observed, but did not react to, efforts by Erb to "chill the bidding," and that, shortly thereafter, Arbuckle placed the property under contract for sale at a price of $1,300,000. Keefe alleged that because of the lack of statutory notice, he missed the sale and lost $450,000.

Keefe recognizes there is a dispute over whether the Yolland note was properly endorsed and delivered. But the crux of his complaint was not that he could have enforced or sold the note; it was that he could have protected his security interest by purchasing the property himself.

The Seastrands cite cases addressing enforcement of negotiable instruments, including a case that describes the history and purpose of the law applicable to negotiable instruments. (See *Creative Ventures, LLC v. Jim Ward & Associates* (2011) 195 Cal.App.4th 1430.) But none of the cited cases holds that the Civil Code section 2924b notice requirement, which has been in existence for over 30 years, applies only to holders in due course. The Seastrands also quote a bankruptcy court opinion that involved a bank's right to relief from bankruptcy stay, and an opinion of this court about judicial notice, but those cases do not support their argument. The law governing actions to collect assigned debts does not assist us in the nonjudicial foreclosure context. (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 270.)

In *Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433 (*Debrunner*), the Court of Appeal rejected an argument much like the one asserted by the Seastrands. Debrunner and others extended a loan secured by residential property in March 2006. (*Id.* at p. 436.) He recorded a deed of trust in the property, but it was junior to a first deed of trust securing a much larger promissory note. (*Ibid.*) The first deed of trust was assigned from one financial institution to another until Deutsche Bank became the final assignee and initiated foreclosure proceedings. (*Ibid.*) The promissory note was not transferred with the assignments of the trust deed. (*Debrunner, supra,* 204 Cal.App.4th at p. 437.) Debrunner tried to halt Deutsche Bank's foreclosure, arguing that a deed of trust " 'cannot be transferred independently' " of the promissory note which must be " 'properly assigned' " and physically attached to the trust deed. (*Ibid.*) Debrunner further argued that the deed of trust and promissory note " 'must remain married and joined to each other for a secured debt to exist. Once they are divorced, or widowed, . . . the deed of trust becomes a nullity and the promissory note an unsecured debt.' " (*Ibid.*)

The court in *Debrunner* held that the nonjudicial foreclosure procedures set forth in Civil Code sections 2924 through 2924k make up a " 'comprehensive framework' " for the regulation of nonjudicial foreclosure, and the framework does not include a mandate for physical possession of an original promissory note. (*Debrunner, supra,* 204 Cal.App.4th at p. 440.) The court found no basis for transferring additional requirements from the California Uniform Commercial Code. (*Ibid.*)

The Seastrands contend *Debrunner* and similar cases are "simply bad law." They remind us that the United States Supreme Court held a note and mortgage "inseparable" back in 1872. But Keefe's action is based on the specifics of California's nonjudicial foreclosure scheme.

The plain language of the notice statute requires that notices be sent to every beneficiary of "any deed of trust . . . recorded subsequent to" the one under foreclosure

and to every assignee of any such beneficiary. (Civ. Code, § 2924b, subd. (c)(2).) We agree with the *Debrunner* court that there is no basis for inserting additional requirements into the nonjudicial foreclosure scheme.

Accordingly, even if the notes and deed of trust were defective or they did not fully comply with the law of negotiable instruments (Cal. U. Com. Code, § 3101 et seq.), as the Seastrands claim, Keefe would still have standing and a basis to sue.

A junior lienholder can reasonably rely on the notice requirements set forth in Civil Code section 2924b. (*Little v. CFS Service Corp*. (1987) 188 Cal.App.3d 1354, 1361.) Lack of notice is "clearly substantial and prejudicial" and can give rise to legal action. (*Ibid*.) Moreover, when a senior lienholder conducts a nonjudicial foreclosure sale in a manner that includes " 'material irregularities,' " tort remedies are available to the junior lienholder. (*South Bay Building Enterprises, Inc. v. Riviera Lend-Lease, Inc.* (1999) 72 Cal.App.4th 1111, 1121-1122.)

A party has standing to sue if "the statement of a cause of action shows an invasion of the plaintiff's legally protected interests." (5 Witkin, Cal. Procedure (5th ed. 2008) Pleadings, § 908, p. 323.) Keefe has standing because he was accurately identified in the chain of title, he received no notice of Arbuckle's sale, and he lost his security interests in a sale alleged to be fraudulent. The motion for directed verdict was properly denied.

B

We turn next to the claim that the trial court erred in excluding evidence regarding whether Keefe was a holder in due course.

In response to a request for admission directed to California Foreclosure, Ms. Seastrand admitted that "it was our obligation, prior to the Sale, to mail or cause to be mailed the Notice of Sale to any and all beneficiaries listed on the Trustee Sale Guarantee under any deeds of trust recorded subsequent to the Arbuckle Deed of Trust." Her

8

admission rendered the matter conclusively established for trial. (Code Civ. Proc., § 2033.410; *Monroy v. City of Los Angeles* (2008) 164 Cal.App.4th 248, 260.)

At the start of trial, Keefe submitted motion in limine No. 1, seeking to exclude evidence and argument regarding the Yolland promissory note. In support of the motion, Keefe referenced the admission by the Seastrands that they had an obligation to give him notice of the sale. The motion said that although the Seastrands originally claimed to have mailed notice to Keefe, they changed their defense when Keefe established during discovery that the proofs of mailing were falsely back-dated. According to Keefe's motion, at that point the Seastrand defense switched to an attack on the validity of Keefe's promissory note and a related argument that Keefe was never entitled to statutory notices. The motion in limine sought an order "excluding any evidence or argument that Keefe is not in possession of the original promissory note."

After extensive argument, the trial court granted the motion in limine, concluding that identification in the chain of title was sufficient for standing, and the admission by the Seastrands meant the matter was no longer at issue.

The Seastrands assert that the exclusion of evidence about Keefe's promissory note deprived them of a fair trial, requiring reversal per se. But the Seastrands admitted they had a statutory duty to send notices to each junior lienholder before conducting a trustee's sale. Keefe's name and address were clearly listed on the trustee sale guarantee as a junior lienholder to whom notice was due. The facts presented demonstrate no applicable limitation or defense to the statutory obligation arising under Civil Code section 2924b.

In any event, if evidence regarding Keefe's promissory note had been admitted, it would not have excused the notice obligation. Because a different result was not

probable, any evidentiary error was harmless.  (*Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069 [applying Code Civ. Proc., § 475].)

DISPOSITION

The judgment is affirmed.


                                                                          _____MAURO_____, J.


We concur:


_____RAYE_____, P. J.


_____MURRAY_____, J.