Filed 6/10/14  Perry v. JP Morgan Chase Bank CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LEIGHTON LEE PERRY,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>JP MORGAN CHASE BANK, NA., et al.,<br><br>        Defendants and Respondents. | A139655<br><br>(Contra Costa County<br>Super. Ct. No. MSC10-02914) |

Plaintiff Leighton Lee Perry appeals from a summary judgment entered against him in his action against Federal National Mortgage Association (FNMA), JP Morgan Chase Bank, N.A.[1] (JP Morgan), and Quality Loan Service Corporation (QLS). Plaintiff defaulted on a loan secured by a deed of trust against his home and brought this action to contest the defendants' right to initiate foreclosure proceedings. Although defendants may be responsible for some confusion on plaintiff's part, we conclude that authority to commence the foreclosure was properly transferred and that plaintiff has failed to create a triable issue over the right to proceed with the foreclosure.

---

[1] Chase Home Finance LLC (Chase) was named as a fourth defendant. However, JP Morgan Chase Bank, N.A. (JP Morgan) is the successor by merger to Chase. Various documents in the record refer to JP Morgan and Chase interchangeably. In the interest of clarity, all references in this opinion will be to "JP Morgan," even if the name "Chase" appears in the particular document in question.

1

## Factual and Procedural History

The following undisputed facts were established in the moving and opposing summary judgment papers.[2]

In May 1988, plaintiff borrowed $130,000 from Valley Federal Savings & Loan Association (Valley), evidenced by a promissory note secured by a deed of trust against his Martinez home.[3] The deed of trust named Valley as the lender and beneficiary, and All Valley Financial Corporation as the trustee. As reflected in documents of which the court took judicial notice,[4] the promissory note and the beneficial rights under the deed of trust were assigned to FNMA on October 7, 1988, by an instrument that was not recorded until July 29, 1991. On July 9, 2009, FNMA executed a document appointing JP Morgan as its "Attorney-in-Fact," with authority to, among other things, execute a notice of

---

[2] Plaintiff's unopposed motion for judicial notice of certain documents filed in the trial court and discovery responses in the action is granted. Plaintiff's supplemental motion for judicial notice is denied.

[3] At his deposition, plaintiff was shown the original promissory note and deed of trust and admitted to having signed both. When presented with the promissory note, he stated "yes, it does appear to be my signature." He now asserts, as his eighth "Issue Presented," that the court was wrong to hold that he had attested to the genuineness of the signature. However, at his deposition, when asked if the signature was his, plaintiff said, "That is an accurate representation of my signature…and it also seems really consistent in the amount of pressure, so I wouldn't swear that that is not a copy, but yes, it does appear to be my signature." When asked if a different loan document bore his signature, he stated, "Yes. That appears to be my signature, but again with the same objection." Plaintiff presented no evidence that he did not sign any of these documents. The trial court correctly observed that "[p]laintiff's speculation that the promissory note he saw at his deposition *could be* a mere copy, cunningly contrived to look like an original, or that it *could be* a forged original, does not create a triable issue of fact."

[4] In his third and tenth "Issues Presented," plaintiff asserts that the trial court erred in taking judicial notice of several recorded documents, including the assignment documents. However, the court did not take judicial notice of the *truth* of the contents of the documents, but properly took judicial notice of the fact that the documents were recorded. (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 265-266.) Declarations submitted in support of the summary judgment motion also attest to the authenticity of the documents. As the trial court explained, "plaintiff's arguments go to the weight or legal significance of the evidence and not its admissibility."

default. On August 25, 2010, the note and beneficial rights under the deed of trust were reassigned by FNMA to JP Morgan by an instrument recorded on August 30, 2010.[5] By an instrument dated September 16, 2010, and recorded on September 23, 2010, JP Morgan replaced the original trustee and named QLS as the trustee under the deed of trust.

In November 2009 plaintiff defaulted on his loan.[6] On January 27, 2010, plaintiff sent a letter to JP Morgan requesting a copy of the promissory note, a written beneficiary statement, and a copy of the deed of trust. JP Morgan originally stated it did not have possession of the deed of trust and advised plaintiff he could obtain a copy from the county recorder.     On June 15, 2010, QLS recorded a notice of default. The notice identified QLS as "agent of the beneficiary" but did not identify the beneficiary. The notice did indicate, however, that any questions should be addressed to JP Morgan and provided a contact address and telephone number. On August 24, 2010, JP Morgan mailed plaintiff copies of the promissory note and the deed of trust. QLS recorded a notice of trustee sale on September 28, 2010.

Plaintiff's first amended complaint asserted four causes of action: (1) declaratory relief; (2) slander of title; (3) quiet title; and (4) violation of Civil Code section 2943.[7] All defendants are named in each of the causes of action, except that QLS is not named as a defendant in the fourth cause of action. Ultimately, all defendants moved for summary

---

[5] Plaintiff alleges a different chain of assignments, for which he provides no evidence, but in all events he acknowledges that JP Morgan became the beneficiary under the deed of trust. Some confusion undoubtedly was created by the trustees' sale guarantee that was issued on June 15, 2010, which listed JP Morgan as the beneficiary and QLS as the trustee. Although the document effecting assignment to JP Morgan of the note and deed of trust was not executed until August 25, 2010, and the document naming QLS as trustee was not executed until September 16, 2010, JP Morgan was authorized to exercise the rights of the beneficiary by virtue of the power of attorney that FNMA executed on July 9, 2009.

[6] Plaintiff admits that he stopped making payments "to the entitled beneficiary." There is no evidence that he made, or attempted to make, payments to anyone else after that date.

[7] All statutory references are to the Civil Code, unless otherwise indicated.

judgment, which the trial court granted. Thereafter, the court entered judgment in favor of all defendants and plaintiff timely noticed this appeal.

**Discussion**

In reviewing the propriety of the summary judgment we apply "the same three-step analysis applied by the trial court: First, we identify the issues raised by the pleadings. Second, we determine whether the movant established entitlement to summary judgment, that is, whether the movant showed the opponent could not prevail on any theory raised by the pleadings. Third, *if the movant has met its burden*, we consider whether the opposition raised triable issues of fact." (*Hawkins v. Wilton* (2006) 144 Cal.App.4th 936, 939–940.) In reviewing the tendered evidence, we may consider matters that can be judicially noticed. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) We review a trial court's ruling on evidentiary objections in summary judgment proceedings for abuse of discretion. (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.)

1. *The First, Second, and Third Causes of Action.*

The trial court observed that the first three causes of action are "based on two theories: (1) JP Morgan defendants and QLS cannot foreclose because JP Morgan does not have physical possession of plaintiff's original promissory note, and (2) the JP Morgan defendants and QLS cannot foreclose because the notice of default was recorded before defendants acquired standing to take action." The court concluded that "there is no triable issue of fact as to either of these two theories." We agree.

Plaintiff's principal argument is that JP Morgan did not have the right to foreclose because it was not the beneficiary under the deed of trust and did not have physical possession of the promissory note when the notice of default was recorded. He points out, correctly, that when QLS executed the notice of default on June 15, 2010, JP Morgan had not yet been assigned his promissory note or the beneficial interest under the deed of trust. These assignments were not made until August 2010.

However, "California's statutory nonjudicial foreclosure scheme (§§ 2924-2924k) does not require that the foreclosing party have a beneficial interest in or physical

4

possession of the note." (*Shuster v. BAC Home Loans Servicing, LP* (2012) 211 Cal.App.4th 505, 511.) "We likewise see nothing in the applicable statutes that precludes foreclosure when the foreclosing party does not possess the original promissory note." (*Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 440 (*Debrunner*).) California "does not require a beneficial interest in both the Note and the Deed of Trust to commence a non-judicial foreclosure sale." (*Lane v. Vitek Real Estate Indus. Group* (E.D.Cal. 2010) 713 F.Supp.2d 1092, 1099.)

Although JP Morgan had not yet acquired legal title to the lender's interest under the loan documents when QLS recorded the notice of default, on July 9, 2009 FNMA had executed a "Limited Power of Attorney," making JP Morgan its "true and lawful Attorney-in-Fact," and authorizing it, "in its name, place and stead and for its use and benefits, to . . . execute, endorse, and acknowledge all documents customarily and reasonably necessary and appropriate for" FNMA to execute, including "the completion, termination, cancellation, or rescission of foreclosure relating to a mortgage or deed of trust, including (but not limited to) . . . the issuance or cancellation or rescission of notice of default." JPMorgan in turn referred the matter to QLS to file the notice of default. QLS recorded the notice of default with respect to plaintiff's loan on June 15, 2010. A principal may confer on its agent the authority to take any action the principal may take. (*Fontenot v. Wells Fargo Bank, N.A., supra*, 198 Cal.App.4th at p. 271; §§ 2305, 2315.) As indicated above, the notice of default states that QLS was acting "as agent for beneficiary." Although the notice does not identify the beneficiary explicitly, it does refer inquiries to JP Morgan and, in all events, there is no requirement that the notice identify the beneficiary. (See § 2943, subd. (a)(1)(A)-(D); *Aceves v. U.S. Bank, N.A.* (2011) 192 Cal.App.4th 218, 232.)

It is equally irrelevant whether QLS or JP Morgan physically possessed the promissory note when QLS executed the notice of default. (*Debrunner, supra*, 204 Cal.App.4th at p. 440.) FNMA reassigned the note and beneficial interest under the deed of trust to JP Morgan soon after the notice of default was recorded, on August 25, 2010, and JP Morgan substituted QLS as the trustee under the deed of trust on September 23,

2010. All further foreclosure proceedings, including recordation of the notice of trustee's sale on September 28, 2010, were properly executed by JP Morgan, as the new beneficiary, and QLS, as the substituted trustee.

Under California law, a notice of default need not be executed or recorded by the trustee under the deed of trust. (§ 2924.) Section 2924, subdivision (a)(1) specifies those who are authorized to record a notice of default. "[S]ection 2924, subdivision (a)(1), permits a notice of default to be filed by the 'trustee, mortgagee, or beneficiary, or any of their authorized agents.' The provision does not mandate physical possession of the underlying promissory note in order for this initiation of foreclosure to be valid." (*Debrunner, supra*, 204 Cal.App.4th at p. 440; *Calvo v. HSBC Bank USA, N.A.* (2011) 199 Cal.App.4th 118, 125.)

Plaintiff asserts that the notice of default was void because it was recorded before the substitution of trustee and the assignment of beneficial interest from FNMA to JP Morgan were recorded. Contrary to plaintiff's assertion, in previously having overruled QLS's demurrer, the trial court did not accept this argument and make "a binding determination that the notice of default was void." Unlike the requirements that apply to "practically obsolete" mortgages under section 2932.5, the agent of the beneficial owner of a deed of trust is authorized to initiate foreclosure "irrespective of the recording of a substitution of trustee." (*Calvo v. HSBC Bank USA, N.A., supra,* 199 Cal.App.4th at p. 125.) As the trial court correctly observed, "[t]he fact that QLS had not been formally substituted in as a trustee at the time QLS recorded the notice of default is not a procedural irregularity under California Law."

Moreover, were there any irregularity in the foreclosure proceedings, plaintiff would be required to show resulting prejudice to obtain relief, and his papers in opposition to the summary judgment motions fail to do so. A plaintiff has the burden to provide substantial evidence of "prejudicial procedural irregularity" in order to rebut the "presumption that nonjudicial foreclosure sale was conducted regularly and fairly." (*Debrunner*, *supra,* 204 Cal.App.4th at p. 443.) In *Fontenot*, the court explained that "a plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate

6

[that] the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interest." (*Fontenot v. Wells Fargo, N.A.*, *supra*, 198 Cal.App.4th at p. 272.)

In *Debrunner*, the plaintiff challenging foreclosure proceedings argued that the notice of default was defective because the beneficiary was not listed and a certain entity was listed as the trustee even though there was no recorded substitution of that entity as trustee at the time. (*Debrunner, supra,* 204 Cal.App.4th at p. 443.) The court held that the plaintiff was not prejudiced because even though the beneficiary was not listed, the attorney-in-fact's name, address, and telephone number were listed. (*Ibid.;* see also *Aceves v. U.S. Bank N.A., supra,* 192 Cal.App.4th at p. 232.) Here, it is equally clear that plaintiff did not suffer any prejudice as a result of the manner in which the notice of default was worded. As in *Debrunner*, the notice instructed the plaintiff to contact JP Morgan if he wanted to "find out the amount [he] must pay, or arrange for payment to stop the foreclosure, or if [his] property is in foreclosure for any other reason." The notice included the address and telephone number of JP Morgan. Moreover, JP Morgan wrote plaintiff a letter dated August 24, 2010, enclosing the note and security instrument that plaintiff had requested and advising that plaintiff could contact its "foreclosure attorney Quality Loan Service Corp. at . . ." if he required any "further information regarding to this process or if [he] need[ed] payoff reinstatement amounts." Plaintiff failed to offer evidence of any prejudice that warrants relief. (See *Aceves*, 192 Cal.App.4th 218; *Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 93-94 & fn. 9.)

There is yet another reason for which plaintiff's challenge to the foreclosure fails. Generally, "a debtor cannot set aside the foreclosure based on irregularities in the sale without also alleging tender of the amount of the secured debt." (*Shuster v. BAC Home Loans Servicing, LP, supra,* 211 Cal.App.4th at p. 512.) "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." (*Karslen v. American Sav. & Loan Assn.* (1971) 15 Cal.App.3d 112, 117.) "The basic rule is that an offer of performance is of no effect if the person making it is not able to perform. [Citation.] Simply put, if the offeror '. . . is without the money necessary to make the offer good and knows it . . .' the tender is without legal

7

force or effect." (*Id.* at p. 118.) "The rationale behind the rule is that if [the borrower] could not have redeemed the property had the sale procedure been proper, any irregularities in the sale did not result in damages to the [borrower]." (*FPCI RE-HAB 01 v. E & G Investments, Ltd.* (1989) 207 Cal.App.3d 1018, 1022.) Thus, "[a]llowing plaintiffs to recoup the property without full tender would give them an inequitable windfall, allowing them to evade their lawful debt." (*Stebley v. Litton Loan Servicing, LLP* (2011) Cal.App.4th 522, 526.)

So far as the record indicates, plaintiff has not tendered or made an unconditional offer to tender the full amount owing on the loan. (See *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 114.) Plaintiff stated in his amended complaint that he was "willing to tender the amount received *subject to equitable adjustment* for the damages caused to defendant by the plaintiff's activities." (Italics added.) He claims he has sufficient equity in his home to allow him to "refinance with a reverse that would satisfy his mortgage obligation and has a loan pending, subject to the results of this action." This conditional offer of performance does not guarantee that plaintiff will be able to perform and is an insufficient tender. (*Karslen v. American Sav. & Loan Assn., supra,* 15 Cal.App.3d at pp. 117-118.)

### 2. *Plaintiff's Fourth Cause of Action for Violation of Section 2943.*

Plaintiff's fourth cause of action alleges that FNMA and JP Morgan violated section 2934, subdivision (e)(4) by failing to adequately provide plaintiff with a requested beneficiary statement. Defendants assert that federal law preempts this claim. (*Lopez v. World Savings & Loan Assn.* (2003) 105 Cal.App.4th 729.) Plaintiff makes a two-fold response. First, he argues that defendants waived this affirmative defense by failing to allege it in their answer to the amended complaint. Second, he argues that the requirement of providing a beneficiary statements under section 2943 has not been preempted.

Plaintiff's first contention is without merit because "California law does not require that preemption be alleged as an affirmative defense and specifically allows

preemption to be raised for the first time by summary judgment motion." (*Dearth v. Great Republic Life Ins. Co.* (1992) 9 Cal.App.4th 1256, 1276.) Preemption is a question of subject matter jurisdiction and is thus not waived by failure to assert it in the answer. (*DeTomaso v. Pan American World Airways*, *Inc.*, (1987) 43 Cal.3d 517, 520, fn. 1, 235.)

As to the merit of the preemption argument, federal regulations provide: "Pursuant to sections 4(a) and 5(a) of the HOLA [Home Owners Loan Act], 12 U.S.C. 1463(a), 1464(a), OTS [Office of Thrift Supervision] is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA." (12 C.F.R. § 560.2 (2002).) In *Lopez*, this court held that "section 2943 is within the scope of those provisions that 12 C.F.R. part 560.2 (2002) is intended to preempt. Therefore, if [as the court also held] the regulation itself has been authorized by Congress, neither the cause of action for violating . . . section 2943 nor the cause of action for engaging in a practice deemed unlawful or unfair because it violates that provision can proceed." (*Lopez v. World Savings & Loan Assn., supra,* 105 Cal.App.4th at p. 742.) We held that "insofar as it applies to federal savings and loan associations, . . . section 2943 has been preempted by the federal regulation, as has any cause of action under the [unfair competition law] that is predicated on a violation of section 2943." (*Lopez*, p. 745; see also *Jelsing v. MIT Lending* (S.D.Cal., July 9, 2010, No. 10cv416 BTM (NLS)) 2010 U.S.Dist. Lexis 68515, pp. *6-7 ["Under California law, when a lender receives a letter demand for 'a copy of the note or other evidence of indebtedness,' it must deliver a copy, along with a beneficiary statement, within twenty-one days. This provision imposes a requirement related to disclosure . . . or the processing or servicing of mortgagees. It is therefore preempted."].)

Valley was a federally chartered savings and loan association. Therefore, federal law preempts any cause of action under section 2943, even if brought against an assignee of Valley that is not a federally chartered savings and loan association. (*See Javaheri v.*

9

*JPMorgan Chase Bank, N.A.* (C.D.Cal., Aug. 13, 2012, No. 2:10-cv-08185-ODW (FFMx)) 2012 U.S.Dist. Lexis 114510, at p. *9 ["Although JPMorgan is not a federal savings bank and is not regulated by the OTS, the same HOLA preemption analysis still applies because the loan originated with a [federal savings bank]."].)

Plaintiff attempts to distinguish the Civil Code provision requiring delivery of a beneficiary statement from the fee requirement challenged in *Lopez*. However, federal law "occupies the entire field of lending regulation for federal savings associations'" including 'all state laws purporting to regulate any aspect of the lending operations of a federally chartered savings association." (*Lopez v. World Savings & Loan Assn.*, *supra*, 105 Cal.App.4th at pp. 740-741.) Even if defendants did not fully comply with the requirements of section 2934, subdivision (e)(4)—which we do not suggest—the cause of action as pleaded is preempted.

Plaintiff belatedly attempted to change course in the trial court, and argues on appeal that defendants failed to comply with the requirement imposed by the Real Estate Settlement Procedures Act (RESPA), 12 United States Code section 2605(e), that a loan servicer timely respond to a borrower's "qualified written request" (QWR). Plaintiff contends that he did not receive an adequate response to his written request to JP Morgan for a "beneficiary statement pursuant to [section] 2934 and a true copy of the Note and [deed of trust]."

Because plaintiff did not state a cause of action under RESPA in his amended complaint, the trial court refused to rule on this alternative theory. Nonetheless, the court did note that, in any event, "the letter[] on which plaintiff relies do[es] not constitute a valid 'qualified written request' under RESPA." The trial court was correct.

Section 2605, subsection (e) of RESPA requires a loan servicer to provide disclosures relating to the assignment, sale, or transfer of loan servicing to a potential or actual borrower. (12 U.S.C. § 2605(e)(1)(B)(i).) The loan servicer has a duty to respond to a borrower's "qualified written request." In order to qualify as a QWR, a borrower's inquiry must "include[] a statement of the reasons for the belief of the borrower . . . that the account is in error or provide sufficient detail to the servicer regarding other

10

information sought by the borrower." (12 U.S.C. § 2605(e)(1)(B)(ii).) In *Gates v. Wachovia Mortg., FSB* (E.D.Cal., June 28, 2010, No. 2:09-cv-02464-FCD/EFB) 2010 U.S.Dist. Lexis 64268, the court held that "[t]he purported QWR contain[ed] no statement of plaintiff's belief as to the existence of a servicing error, nor [did] it contain anything to put Wachovia on notice of a servicing error. Rather, the letter [was] primarily aimed at uncovering documents relating to the ownership of the obligation, as well as seeking rescission or modification by calling into question the validity of the loan." (*Id.* at p. 10.) The court concluded that "neither an inquiry into the ownership of a loan, nor an allegation of defective loan documentation, are sufficient to transform an otherwise non-qualifying correspondence into a QWR." (*Ibid.*)

Here, plaintiff's written request similarly does not qualify as a valid QWR. His letter to JP Morgan requested a "beneficiary statement pursuant to [section] 2934 and a true copy of the Note and [deed of trust]." As in *Gates*, the letter sought documents relating to the ownership of the obligation and did not include a statement of the reasons for believing that there was an error in the account. Since plaintiff did not submit a valid QWR, there is no need to consider his contention that RESPA "trumps" the preemption of section 2934.

### 3. Plaintiff's Additional "Arguments"

Finally, there is no merit in the numerous additional "arguments" that plaintiff includes in his appellate briefs, to the extent the arguments are even comprehensible. Plaintiff argues that the trial court committed reversible error by failing to provide a statement of decision. Passing the fact that the court did provide a thorough written explanation for its ruling, the trial court is not required to issue a statement of decision on a motion for summary judgment. (*Mechanical Contractors Assn. v. Greater Bay Area Assn.* (1998) 66 Cal.App.4th 672, 678.) On a motion for summary judgment the court does not make findings of fact, but instead "it is the duty of the trial court to determine whether plaintiff or defendant has presented any facts which give rise to a triable issue or

11

defense, not to pass upon or determine the issue itself." (*Perry v. Farley Bros. Moving & Storage, Inc*. (1970) 6 Cal.App.3d 884, 889.)

Plaintiff appears to argue that the trial court erroneously awarded the defendants "Equitable Relief," but the court granted no form of equitable relief. The court did no more than grant defendants' motion for summary judgment, rejecting plaintiff's challenges to the foreclosure proceedings. In footnotes 2 and 3, *ante,* we have addressed plaintiff's objections to the premise that he signed the promissory note and deed of trust in question, and to the taking of judicial notice of the recorded title documents. Further, plaintiff makes no showing that the court abused its discretion, much less denied plaintiff due process, by assigning a "discovery facilitator" after ruling on his motion to compel production of documents and further responses to interrogatories.

### Disposition

The judgment is affirmed. Defendants shall recover their costs on appeal.

_____
Pollak, J.

We concur:

_____
McGuiness, P. J.

_____
Siggins, J.

12